[L. A. No. 3867.   Department Two.—May 16, 1917.]

SMITH–BOOTH–USHER COMPANY (a Corporation), Appellant, v. LOS ANGELES ICE AND COLD STORAGE COMPANY (a Corporation), Respondent.

WARRANTY OF FITNESS OF MANUFACTURED PUMP—WRITTEN CONTRACT— CAPACITY TO DELIVER WATER FROM WELL—SANDING UP OF WELL.— A manufacturer's warranty of the fitness of a pump, contained in a written contract for its manufacture and sale, that it would have a capacity to deliver a certain quantity of water per minute from a well of given dimensions to be sunk at a specified location, contemplates the working of the pump in a normal well of the designated size and depth; and the fact that the pump would not deliver such quantity of water from a well filled and filling with loose sand does not establish a breach of the warranty.

ID.—PAROL EVIDENCE TO BROADEN WRITTEN WARRANTY.—In an action to recover for a breach of such warranty, the terms of the written agreement may not be extended by parol evidence of the understanding of the parties.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. N. D. Arnot, Judge Presiding.

The facts are stated in the opinion of the court.

William M. Hiatt, and Edward M. Selby, for Appellant.

Sidney J. Parsons, and C. W. Pendleton, Jr., for Respondent.

HENSHAW, J.—Plaintiff sold a pump and pumping apparatus to defendant under circumstances hereinafter related. It was paid a part of the purchase price, the pump was installed, and failed to give good service. Defendant so notified plaintiff, demanded a return of its money, and requested a removal of the pump, in order that it might install one which would perform the desired service. Thereupon plaintiff brought this action to recover the unpaid part of the purchase price and defendant answered, averring that it purchased the pump under a warranty that it would deliver five hundred gallons of water per minute, and that the pump in fact would not deliver to exceed one hundred gallons per minute. It counterclaimed, seeking a return of the amount of the partial payment which it had made on the purchase price of the pump and compensation for expenditures to which it had been put in its efforts to overcome the imperfections of the pump. The court found that the agreement between the parties was that the plaintiff would deliver a pump "which would furnish to said defendant not less than five hundred gallons of water per minute"; that the pump was unable to furnish more than one hundred gallons per minute; that by its written contract plaintiff warranted to the defendant that the pump would be reasonably fit for the particular purpose for which it was ordered, "but that the pump manufactured or caused to be manufactured by plaintiff and by plaintiff delivered to defendant was not reasonably fit for said purpose"; that in executing the contract defendant relied upon the warranty of fitness; that plaintiff warranted that the pump which it would manufacture and deliver "would have a capacity of delivering to defendant at least five hundred gallons of water per minute from a well of defendant located in accordance with the specifications in said written contract contained." Following these findings judgment was given against plaintiff and in favor of defendant on its counterclaim.

The question advanced by appellant for determination is two-fold. First, did it give such a warranty as the court found, and, second, if it did, did the pump which it furnished fail to conform to the requirements of the warranty? The facts are that defendant in its business used water from several wells upon its premises. In the pumping of these wells it had been using air-lift pumps. It was represented to

it that a pump known as the Weber subterranean pump would furnish a larger supply of water at less expense. The Weber subterranean pump was manufactured by the Weber Subterranean Pump Company of New York, but plaintiff represented that company as a selling agent.. The Weber subterranean pump operated by compressed air. The result of conversations was a contract in writing, which, of course, measures the rights, duties, and obligations of the parties. The well in which the Weber pump was to be used had not at the time been dug by defendant, so that the specifications referred to in the findings could only go, as will appear from the contract itself, to such matters as its location and depth. The plaintiff submitted to defendant in writing the following: "As per your request we have submitted to the Weber Subterranean Pump Company of New York, three propositions as follows: Well to be eighteen inches inside diameter; 250 feet deep; location of well 50 feet from (air) compressor; capacity 500 gallons per minute." Then followed Proposal A, based on the water level lowering during the pumping to a depth not exceeding 120 feet below the surface of the ground. Upon this the offer continued with a list of materials, being manifestly the necessary and component parts of the pump itself, concluding with "all cut to proper lengths and fitted complete, ready to erect, delivered to your plant, and one competent man furnished to superintend and assist in the erection of same; all for the sum of $2,085.90." Then followed Proposal B, "based on water level receding when pumping 500 gallons per minute not to exceed 150 feet below surface of ground, the equipment would remain the same (as under Proposal A) with the exception of necessarily added casing to place the valves at the greater depth, the total addition of cost of material for this purpose being $118.60. There would be required for this service approximately 615 cubic feet of free air per minute delivered from the compressor at about 65 pounds gauge pressure."

This Proposal B was formally accepted in writing by defendant. In due time the well was dug and the pump installed. From the outset of the operations of the pump there was trouble, and this trouble clearly arose, not from any defect in the pump itself, but from the fact that the well ended in water-bearing sand and that the action of the compressed air disturbed this sand and forced it into the pipes and

clogged the valves. Upon the first occasion when the pump, after installation, was removed there were thirty feet of loose sand in the bottom of the well and four feet of sand in the pump casing and valves. The pump itself worked perfectly saving for this impediment to its successful operation. The Weber pump, which in the principle of its operation forced the water upward by compressed air at the bottom of the well, created a much greater disturbance of this sand than did the straight air-lift pumps which defendant theretofore had used, and which, while they would furnish a less supply of water, created much less disturbance of the sand itself. This fairly presents the conditions as shown by the evidence.

Since this contract was reduced to writing, nothing which is not found in the writing (except that which is presumed by law from that which is written) can be considered as a part of the contract. (*Johnson* v. *Powers*, 65 Cal. 179, [3 Pac. 625].) The writing did contain an express warranty of capacity of the pump, that is to say, it declared that the pump, working in a well of designated diameter and depth, and within a fixed distance from the air compressors, would deliver five hundred gallons of water per minute. Respondent, in addition to this, invokes the application of section 1770 of the Civil Code, which declares that "one who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." It may be said that this warranty, erected by law, also becomes a part of the contract under the circumstances here shown, the plaintiff being considered as an agent for the manufacturer, and the manufacturer having supplied an article for a particular purpose, thereby warranting that it is reasonably fit for that purpose. What, then, precisely was the purpose which measures the warranty? It could be no more than that, working in a normal well of the designated size and depth, the pump would lift and discharge five hundred gallons of water per minute, and the evidence leaves no doubt that this pump would do this thing. It was called upon to work, however, under abnormal conditions—in a well filled and filling with loose sand. Plaintiff's warranty certainly cannot be extended to include this condition, nor could plaintiff know that such condition would exist, since in fact the well had not been dug. It was as much without the contemplation of the warranty, whether it be regarded as express or

implied, as it would have been if the well, dug to the size and capacity, had not contained a sufficient quantity of water to furnish five hundred gallons a minute. Moreover, while the rights of the parties are to be found in the terms of their written contract, to which are to be added such warranties as the law itself creates under proven circumstances, the parol evidence itself does not show that the plaintiff intended to warrant, or was ever called upon to warrant, the operation of its pump in a heavily sanded well. Defendant's manager testifies that he explained to plaintiff "our whole situation as to the wells we had and the trouble we had with the pumps we had in them." He testifies further as to one well that the defendant was afraid to longer pump it lest the sand removed might cause a cave in the surface soil, but nowhere does it appear that it was in contemplation that the well to be dug would be overloaded with sand and that the pump which plaintiff was to furnish was to have a five hundred gallon per minute capacity working in such sand. The article furnished was reasonably fit for pumping an ordinary well of the size and capacity specified. If defendant desired a warranty that it would so pump under any condition which might be developed after the digging of the well, it should have seen to it that this warranty was expressed in the contract, as clearly it is not. Whatever may have been the conversations touching this matter, the terms of the written agreement may not be extended because of them. (*Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228, [52 Pac. 496]; *Germain Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, [96 Pac. 319]; *United Iron Works* v. *Outer Harbor Dock and Wharf Co.,* 168 Cal. 81, [141 Pac. 917].)

The judgment and order appealed from are therefore reversed.

Melvin, J., and Lorigan, J., concurred.