SHAW, P. J.
Plaintiff sues for rent due on a written lease, made long before the United States entered into the present war. The only defense to which evidence was addressed at the trial is that defendant’s use of the premises for the purposes for which the lease was made became unlawful or at least unprofitable by reason of certain regulations made by the Federal Government, under its war powers, regarding the sale of tires and tubes. In support of the judgment for defendant he invokes the doctrine of “commercial frustration,” as it is sometimes called, claiming that he can no longer carry on with profit the business for which he leased the property and that he is for that reason freed from his obligations under the lease.
The lease contains no limitation of the uses to which the lessee may put the leased property. In the absence of such limitation, the tenant may use the property for any lawful purpose not materially different from that in which they are usually employed, to which they are adapted or for which they were constructed. (36 C.J. 84, 87; Keating v. Preston (1940) 42 Cal.App.2d 110, 115 [108 P.2d 479].) The fact that before the written lease was entered into the parties discussed defendant’s use of the building, and defendant said he wanted to lease it to engage in the tire business and would engage in that and the battery business does not limit his use to those purposes. The conversation does not purport to have that effect, and even if it did, it could not be given such *913 effect against the written lease containing no such limitation. (Sec. 1625, Civ. Code; sec. 1856, Code Civ. Proc; Gibbs v. Seeger (1933) 130 Cal.App. 123, 128 [19 P.2d 514].)
It appears that after defendant took possession of the leased property he conducted therein the business of selling new and used tires, chiefly the latter, and did some business • in taking in tires for retreading and vulcanizing, in fixing flat tires and in recharging and renting batteries. The property, as described in the record, was adapted and suitable for all these purposes, as well as others, and undoubtedly defendant had the right, under his lease, to engage in these and other lines of business for which such a structure could readily be used. The government regulations to which defendant refers did not affect at all the battery business or the fixing of flat tires, nor did they prohibit the selling of new or used tires or the retreading of tires altogether. They prohibited such sales and retreading except to persons who had certificates therefor from their ration boards and greatly limited the classes of persons who could obtain such certificates. Thus the defendant could carry on parts of his business as before, and was not altogether stopped in any of it, although the number of possible customers for the major part of the business as he conducted it was cut down and it was probably thereby made unprofitable for him to continue in business.
The law applicable to such a situation was declared in Grace v. Croninger (1936) 12 Cal.App.2d 603, 607 [55 P.2d 940], where property had been leased under a lease which limited the lessee to carrying on therein the business of a saloon and cigar store and a bootblack stand, and thereafter the saloon business was made unlawful by the War-Time Prohibition Act, and the court held that this act did not invalidate the lease, and rent accruing after it took effect could be collected from a guarantor, saying: “ . . . where the contract does not restrict the use of the leased premises to a single purpose, it is not invalidated by a subsequent enactment prohibiting the use for less than all of the several purposes specified.” The same rule was followed in Burke v. San Francisco Breweries, Ltd. (1913) 21 Cal.App. 198, 203 [131 P. 83].
The same question arose under the present wartime regulation stopping the sale of new automobiles except to those *914 who can obtain ration board certificates authorizing them to buy, in Byrne v. Balcom (N.Y.App. Div. 1942) 38 N.Y.S. 2d 801, 803. That was an action by a landlord to recover rent due on a lease, and the defendant, who was an automobile dealer, set up the regulation just mentioned as a defense. On this point, the court said: “Undoubtedly the lease contemplated the sale of new cars on the premises but the lessee is not restricted to the exclusive sale of such ears but may devote the property to other legal uses specified in the lease. This is not a case where the parties entered into a lease exclusively for a use which was not illegal when the contract was made but which was subsequently made illegal by operation of law. . . . Respondent is not entirely prohibited by government decree from selling new cars. His right to do so is restricted.
“There can be no doubt about the proposition that where a lease restricts and limits the use of the premises let to a particular specified purpose and thereafter, because of the enactment of valid governmental statutes, decrees or regulations such use becomes unlawful, the subject matter of the contract is destroyed and the covenants of such lease will not be enforced against either party thereto. The rule is that where the lease is exclusive the subsquent passage of prohibitory laws terminates it. A change in the law during the term of the lease, however, which merely restricts but does not wholly prohibit the conduct of the business carried on, does not release the tenant from his obligation to pay rent.”
Other recent New York cases are cited by the parties, but as they are decisions by trial courts or other tribunals inferior to the Appellate Division, we do not review them. None of them appears to be based on a view of the law inconsistent with that appearing in Byrne v. Balcom.
The judgment is reversed, and the cause is remanded to the municipal court for a new trial, appellant to recover her costs on appeal.
Fox, J„ and Kincaid, J. pro tern., concurred.