[Crim. No. 8782. Second Dist., Div. Four. Dec. 5, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH HARRIS NORRIS, Defendant and Appellant.

Herman A. English, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Appellant Joseph Harris Norris and Billy Harrison Walker were jointly charged in two counts with the robbery (in Count I), and the murder (in Count II), of Leopold Zollman. The robbery count alleged defendants were armed with a deadly weapon, a pistol.

Motions by defendant Norris for severance of trial and for change of venue were denied. Defendants entered pleas of not guilty. In a jury trial, defendants were found guilty as charged. The degree of crime was specified as the first degree as to each count. The charge in Count I of being armed was found to be true as to codefendant Walker, and not true as to defendant Norris. As to Count II (murder), the jury fixed the punishment at life imprisonment for both defendants. No sentence was imposed on the robbery count (Count I). Probation and motions for new trial were denied. Norris (termed defendant) appeals from the judgment.

The facts are as follows: The victim, Leopold Zollman, operated a bicycle shop. Mrs. Adela O'Sejo lived in a second floor apartment, almost directly across the street from the bicycle shop. Nearly every day for approximately one month prior to November 3, 1961 (the date of the commission of the crimes), Mrs. O'Sejo, from her apartment window, observed defendant and codefendant standing on the sidewalk in front

of her apartment. They would smoke and look at the bicycle shop across the street. They would arrive at about 3 p.m. and leave about 5 p.m.

On November 3, 1961, at approximately 1:45 p.m., Mrs. O'Sejo again saw defendant standing outside of the bicycle shop. She watched him from her window for about five minutes. He was smoking and looked "rather suspicious." "He would turn and look here and there, to all sides." She observed a man and a woman walking on the sidewalk, approaching the bicycle shop. As they passed by she heard defendant say "just a moment." After the couple had passed she heard three shots. She then observed codefendant Walker running out of the bicycle shop. He had a gun in his hand. As he came through the doorway of the shop, he appeared to be attempting to put the gun into his belt. In doing so, he appeared to lose his balance, and placed his hand on the plate glass window of the shop to prevent himself from falling. (A fingerprint expert testified at the trial that fingerprints belonging to codefendant Walker were found on the shop window.) Mrs. O'Sejo saw Walker, after emerging from the bicycle shop, run toward a liquor store on the other side of the street, while defendant ran south on Central Avenue.

Sammy Mosby was a clerk in the liquor store, located across the street from the bicycle shop. At approximately 2:45 p.m., November 3, 1961, he heard a noise, which sounded like three gunshots in rapid fire coming from the direction of the bicycle shop. Shortly after hearing the shots, he saw a man resembling codefendant Walker run by the liquor store. The man carried a pistol. Two residents of the neighborhood where the bicycle shop is located also observed a man resembling codefendant Walker, running from the area.

Martin Van Fleet was delivering beer to the liquor store. He heard a noise sounding like three shots. He looked toward the bicycle shop and noticed a man standing in front of the shop. He saw another man run out of the shop, proceed north, cutting diagonally across 75th Street and disappear around the back of the liquor store. The latter was carrying a gun. Van Fleet crossed the street and entered the bicycle shop. He observed that Zollman was "hurt." He ran across the street to a phone booth to call the police. When he entered the phone booth the man he had seen standing in front of the bicycle shop was still there but when he left the phone booth he noticed the man was gone.

Deputy Sheriff William Baker received a call to go to the

bicycle shop shortly after 2 p.m. on November 3, 1961. He arrived in a few minutes and was the first officer at the scene. On entering, he saw Zollman sitting on a stool behind a counter a few feet from a cash register. The officer observed there was blood on his shirt and forehead.

Zollman was taken by ambulance to the hospital. Deputy Sheriff Thornton spoke to him at the hospital about 4 p.m. that same day, as he was being prepared for surgery. Zollman stated that he was "hurting real bad" and was going to die. When asked by the officer what had happened, he gave the following account: He was sitting in his store when a man entered, pulled out a gun and said he wanted money. The man then took approximately $100 in bills from his cash register. During the robbery he noticed that there was another man standing outside who appeared to be shorter in height than the man in the store. When the man standing outside motioned to the man in the store, the latter said, "That's it," and then shot him.

Zollman died later the same day. An autopsy was performed November 4, 1961. Death was attributed to four gunshot wounds in the abdomen. Several expended cartridge cases were found on the floor of the bicycle shop near the cash register. When compared with two bullets taken from the victim's body, it was determined they were fired from the same automatic pistol. A pistol with a closed barrel, which fired only blank type cartridges, was found on a shelf near the cash register. There were several expended and some live cartridges in the cylinder.

Mrs. O'Sejo, who testified at the trial through a Spanish interpreter, stated she understood very little English. She did not tell the police what she had observed until November 6, 1961, when officers came around asking questions, because her husband told her "not to get mixed up in these things." She had attended a police lineup and identified defendant and codefendant Walker correctly. However, in testifying at the preliminary hearing she mistakenly identified defendant as the man who came running out of the bicycle shop. She stated she made this mistake because she was nervous. When she left the witness stand and had a chance to "think straight" she explained her mistake to the deputy district attorney.

Deputy Sheriff Frank Morales, who spoke Spanish, interpreted for Mrs. O'Sejo at lineups held on January 3, 1962, and February 6, 1962. In each instance she identified defend-

ant as being the man standing outside and Walker as the man who ran from the store.

Deputy Wahlke had a conversation with Walker after his arrest in which Walker admitted he "held up" and shot Mr. Zollman. Walker asserted that he shot Mr. Zollman when the latter picked up a gun and fired it at him. Walker initially said that defendant was not with him at the time of the robbery although defendant had "cased" the job. Later, he said defendant and another person started out with him because he had a disagreement with defendant (referred to as "Toje"), defendant was "let out" before they reached the bicycle shop. Thereafter, however, Walker stated that defendant had acted as a lookout during the robbery; that defendant was standing in front of the bicycle shop. The trial court admonished the jury with respect to the officer's testimony concerning Walker's statements (and also with respect to a tape recording of the statements which was introduced into evidence), that they were to be considered only in relation to codefendant Walker.

Officer Lamoreaux arrested defendant on December 31, 1961. At the time of his arrest defendant acknowledged he knew Walker. Respecting the charge of murder, defendant said, "You'll never burn me, because you do not have any witnesses."

Officer Wahlke talked with defendant on January 4, 1962. Defendant told the officer he was at home until about 11:15 a.m. on November 3, 1961, at which time he went to visit a friend named Sidney Rand; he was with Rand until late that afternoon; the reason he remembered the date was November 3 was because of a conversation with codefendant Walker on November 4; Walker had called and asked him to read a newspaper; he complied with this request and noting references to three robberies, including the one at the bicycle shop, he called Walker back and told him he had read the newspaper; Walker, however, gave no indication as to why he had wanted defendant to read the newspaper.

Defendant took the stand in his own behalf and denied any participation in the robbery. He denied that he had "cased" the bicycle shop or that he had gone there at any time on November 3. He admitted he was with Walker for "awhile" the morning of November 3; thereafter he visited Sidney Rand; the next morning he had a conversation with Walker; Walker stated he should read the newspaper giving his specific attention to robberies; he asked Walker if he was in-

volved in any of the robberies reported in the newspapers; Walker replied "No;" he saw Walker at about noon on November 4 and at that time Walker admitted that he committed the robbery at the bicycle shop and that he shot Zollman.

 Defendant contends that the evidence was insufficient to support the judgment and that the trial court erred in denying his motions for a separate trial. Defendant consolidates these two contentions and in effect urges that a miscarriage of justice resulted from the admission in evidence of codefendant Walker's extra-judicial statements implicating defendant, coupled with the assertion that the only eyewitness testimony (that of Mrs. O'Sejo) was "so inconsistent and contradictory as to be insufficient to support the conviction." We cannot agree.

Section 954 of the Penal Code permits the joinder of two offenses connected together in their commission. Section 1098 of the Penal Code provides for the trial of two defendants jointly charged with the commission of a public offense unless the court orders separate trials. The granting of a motion for separate trial is a matter solely within the discretion of the trial court. (*People* v. *Ketchel,* 59 Cal.2d 503, 533 [30 Cal.Rptr. 538, 381 P.2d 394].) In the absence of a strong showing to the contrary, it is presumed that instructions limiting the consideration of evidence to one defendant only sufficiently protects the other defendant's right to a fair trial. (*People* v. *Pike,* 58 Cal.2d 70, 85 [22 Cal.Rptr. 664, 372 P.2d 656].)

 Defendant concedes the trial court gave both complete and proper admonitions to the jury limiting their consideration of the statements of codefendant Walker only in relation to his case alone. As in the instant case, in *People* v. *Ketchel, supra,* 59 Cal.2d 503, one of three defendants charged with robbery and murder made a motion, prior to the commencement of a joint trial, that he be tried separately because statements by his codefendants implicated him in the crimes charged and would be highly prejudicial to his case. The trial court denied the motion and, on appeal, the Supreme Court affirmed the trial court, quoting with approval (at p. 553) from the case of *People* v. *Cohen,* 107 Cal.App.2d 334, 342 [237 P.2d 301]: " 'A severance may be properly denied where there is a common element of substantial importance in the commission of the crimes. It will not be granted because damaging testimony or confession of a code-

fendant might be admitted.' [Citations.]'' Here, as in the *Ketchel* case *supra,* the ''common element of substantial importance'' is that both defendants were charged with committing the offenses alleged in the information. Accordingly, no abuse of discretion is shown.

Defendant maintains that the testimony of Mrs. O'Sejo was inconsistent and contradictory. ■ However, the weight of the evidence in a criminal prosecution is a matter in the first instance for the jury to determine, and after the verdict, in the second instance, for the trial court. ■ If the circumstances reasonably justify the verdict, as they do in the case at bench, the opinion of an appellate court that those circumstances might also reasonably be reconciled with the innocence of a defendant will not justify interference with the verdict. (*People* v. *Griffin,* 60 Cal.2d 182, 188 [32 Cal.Rptr. 24, 383 P.2d 432].)

■ The jury may believe a portion of a witness's testimony and disbelieve the remainder. However, on appeal, only that portion supporting the judgment must be accepted and not the portion tending to defeat the judgment. (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836].)

Particularly applicable is the statement of the court in *People* v. *Shaheen,* 120 Cal.App.2d 629, 636-637 [261 P.2d 752] : ''For many persons, positive identification is difficult even where one is observed under normal conditions. The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of the witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. This court may not disturb such finding or the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction.''

■ Testimony was given by a witness in the case before us that she observed defendant standing outside the bicycle shop, the scene of the robbery and shooting, at the time of its occurrence; that shortly after hearing gunshots and observing codefendant run out of and away from the shop, she saw defendant also run from the scene. In addition, evidence was presented that before he died, the victim told a police officer there was another man standing outside of his shop during the robbery; that just before he was shot, the man standing outside motioned to the man who shot him.

We conclude that there is ample evidence to support the conviction in this case. The evidence reflects that defendant was aiding and abetting codefendant Walker and was therefore a principal in the offenses charged. (Pen. Code, § 31.) It was for the jury to evaluate any apparent inconsistencies in the testimony of Mrs. O'Sejo and in her explanations therefor.

The judgment is affirmed.

Burke, P. J., and Kingsley, J., concurred.