[Crim. No. 6994.   First Dist., Div. One.   Feb. 27, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE
OLIVER BURNS, Defendant and Appellant.

Paul J. Matzger, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and James B. Cuneo, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following a jury trial, of robbery of the first degree. (Pen. Code, § 211.) He makes a number of contentions, each of which we will discuss under separate headings following a narrative of the pertinent facts.

### Facts

At approximately 10 p.m. on May 27, 1967, Alfred Llamas, a part-time employee, was working alone at the Al Salcedo Service Station on Old Bayshore in San Jose. While Llamas was washing the ladies' restroom he was approached by a robber who was armed with a gun. The armed man told Llamas to raise his hands and to turn over the money. Llamas went to the area next to the gas pumps where the cash box was kept and turned over approximately $50 in currency to the robber who put it in his front pants pocket. Llamas testified that the man who robbed him had a nylon stocking over his face, that he carried a long-barrelled gun, that he wore dark gloves, that he also wore a long-sleeved varied-colored plaid or striped shirt outside of dark trousers. In court

Llamas identified items of clothing worn by defendant at the time of his capture subsequent to the robbery as those worn by the man who robbed him.

After pocketing the currency, the robber ordered Llamas to return to the restroom. However, Llamas immediately left the restroom and proceeded to the office area to telephone the police. As he went toward the office he saw the robber get into the driver's side of a parked automobile and drive off toward San Francisco. According to Llamas the automobile was a dark brown 1955 Chevrolet with primer paint spots, black tires and no hubcaps. Llamas stated he could not see whether there was any other person in the automobile. He immediately called the San Jose Police Department.

The first officer to reach the scene was Bruce Wick of the San Jose Police Department who testified that he received a call concerning the robbery at about 10:07 p.m. at which time he was patrolling in a marked vehicle. Officer Wick stated that Llamas described the robber to him as a white male adult between 25 and 27 years of age, about 5 feet 7 inches tall, weighing approximately 170 pounds, and that he had worn a nylon stocking on his face and had on a dark plaid shirt. Llamas further told Wick that the robber carried a long-barrelled small caliber gun and that the automobile was gray or dark brown with primer paint. Officer Wick broadcast this information to police communications.

Officers Block and Christensen of the California Highway Patrol learned of the armed robbery by police radio at around 10 p.m. while they were on duty on the Bayshore freeway. At a few minutes past 10 the officers sighted a dark automobile with primer paint proceeding north on Bayshore. Two persons occupied the car, and the passenger turned and looked at the patrol vehicle and then slouched down in the seat. The officers followed the automobile for approximately two miles before stopping it with the assistance of a police unit from Menlo Park. The passenger was ordered out of the suspect vehicle and was identified in court by Officer Block as defendant. He was wearing a plaid shirt, dark trousers and was about 5 feet 7 inches in height. The driver was identified as the codefendant Sibert. The officers looked in the automobile and saw a carbine rifle in plain sight and found a pellet gun under the front seat. The pellet gun was identified by Llamas as the robbery weapon. The officers also found a pair of dark gloves in the vehicle.

At the time defendant and the codefendant were stopped on

the highway, Officers Morton and Hilscher of the San Jose Police Department were at the scene of the robbery. While they were in the process of further investigation word was received that the California Highway Patrol had stopped the vehicle, and while Officer Hilscher was talking with Llamas, Officer Morton shouted at him, ''Hey, Art, the CHP has a vehicle stopped around Marsh and Bayshore as a possible suspect.'' After waiting for Llamas to close the service station, the officers drove him to the place where the suspect vehicle had been stopped. On the way there was no discussion of the robbery.

When Morton, Hilscher and Llamas arrived on the scene, defendant Burns was standing to the rear of the suspect vehicle. He was well illuminated by the headlights and spot light of police vehicles on the scene. After getting out of the police car, Llamas identified defendant Burns as the robber while nearly 60 feet away from him, stating ''That is him, that is the guy, that is the shirt.'' Llamas repeated his identification of defendant in court.

A further search of the vehicle revealed a raincoat, a jacket with a nylon stocking in the pocket, dark gloves, and ammunition for the carbine. Approximately $38 was found in the front pockets of defendant's trousers.

### The Pre-Trial Identification

At the trial counsel for defendant objected to Llamas' in-court identification of defendant, maintaining that such identification should be preceded by a hearing out of the presence of the jury on the issue of the fairness of the highway identification. The court did not agree with counsel and a separate hearing was not permitted. Defendant asserts that the trial court committed prejudicial error in denying such a hearing, and then argues that we should decide that the out-of-court identification was so unfair as to constitute a denial of due process. We find no merit in either of these contentions.

■ Before considering these basic contentions of defendant, we first point out that when the fairness of a confrontation is questioned, ''It is up to the appellant to establish that the confrontation resulted in such unfairness and that under the circumstances it infringed upon his right to due process of law.'' (*People* v. *Romero,* 263 Cal.App.2d 590, 593 [69 Cal.Rptr. 748] ; see also *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].) ■ Further, it is clear that ''a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circum-

stances surrounding it, . . ." (*Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967] ; see also *People* v. *Feggans,* 67 Cal.2d 444, 448-449 [62 Cal.Rptr. 419, 432 P.2d 21] ; *People* v. *Irvin,* 264 Cal.App.2d 747, 758 [70 Cal.Rptr. 892] ; *People* v. *Slutts,* 259 Cal.App.2d 886, 892 [66 Cal.Rptr. 862].) ▆ We conclude that in the instant case defendant did not carry his burden of showing vital unfairness and we further conclude that in light of the totality of the circumstances of this case there was no violation of due process.

In pressing his claim that the court should have granted a hearing out of the presence of the jury on the question of the fairness of the highway identification, defendant particularly relies on the case of *People* v. *Douglas,* 259 Cal.App.2d 694 [66 Cal.Rptr. 492] where the appellate court held that where there is a factual conflict concerning the fairness of the confrontation, the trial court should hold a separate hearing on the question of fairness; that if the lineup is found to be unfair, in-court identification can still be allowed if it has independent origin; and conversely, if the lineup procedure is found by the trial court to be fair, the defendant can still offer evidence of unfairness, which evidence goes to the weight rather than the admissibility of the evidence. (P. 698.)

Under the circumstances of the present case, defendant's reliance on *Douglas* is misplaced, and a special hearing on the fairness of the out-of-court identification was not required. Here we do not have a factual conflict as to the circumstances surrounding the identification since neither the People nor defendant argue with the basic physical circumstances surrounding the identification. It is apparent that from the undisputed facts the trial court determined that the identification procedure was fair and that the conditions under which defendant was identified clearly went to the weight of the evidence before the jury.

▆ Turning to defendant's secondary argument that as a matter of law defendant was denied due process in the identification procedure, we first point out that "A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police." (*People* v. *Slutts, supra,* 259 Cal.App.2d 886, 891.) Here there was clearly no such advance suggestion. Llamas had already described the clothing and general appearance of defendant and the type of vehicle before he was ever taken to the scene of the identification. Also, the police did not discuss the possible identification in advance. The evidence was clear

that Llamas' identification of defendant was based only on his own recollection of the perpetrator of the robbery. The applicable principle, moreover, is one which favors prompt identification of a suspect. ■ As the court stated in *Wise* v. *United States,* 383 F.2d 206, 210 [127 App.D.C. 276] [cert. den. (1968) 390 U.S. 964 [19 L.Ed.2d 1164, 88 S.Ct. 1069]] : ''[W]e do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals.'' This principle finds expression in *People* v. *Irvin, supra,* 264 Cal.App.2d 747, 759, as follows: ''Prompt identification of a suspect who has been apprehended close to the time and place of the offense 'aids in quickly exonerating the innocent and discovering the guilty.' [Citation.]'' (See also *People* v. *Smith,* 263 Cal.App.2d 631, 637 [69 Cal.Rptr. 670].)

■ We agree, also, with the court in *People* v. *Romero, supra,* 263 Cal.App.2d 590, 593 where it stated: ''We are not persuaded that we should declare a confrontation objectionable solely because the suspect was viewed with a policeman by the victim.'' Here there was obviously more than one policeman on the premises but numbers do not alter the basic principle. ■ The fact, moreover, that the instant identification procedure involved ''a single person show up'' does not of itself vitiate its fairness or trustworthiness. Such a procedure, although potentially unfair, does not constitute a denial of due process of law if the circumstances of the case demonstrate that the identification was correct and no way untrustworthy. (*Stovall* v. *Denno, supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967] ; *People* v. *Feggans, supra,* 67 Cal.2d 444, 449; *People* v. *Singletary,* 268 Cal. App.2d 41, 45-46 [73 Cal.Rptr. 855].) Such circumstances are afforded in the present case by the prompt identification and the discovery of defendants in the vehicle which had been previously identified by Llamas, by the fact defendant was wearing clothes previously described by Llamas, by the discovery of a weapon in the car which Llamas identified as the gun used in the robbery, and by the finding of cash in defendant's trousers pocket.[1]

---

[1]Defendant in argument also relies to some extent on the case of *People* v. *Caruso, supra,* 68 Cal.2d 183, where the court reversed because of unfair identification evidence. However, in *Caruso* there was *no* other evidence pointing to guilt of the defendant and he had a corroborated alibi.

## *Alleged Griffin Error*

Neither defendant nor his codefendant testified at the trial. In his argument the prosecutor noted a number of times that all of the evidence was given by witnesses for the prosecution, that the evidence had not been explained, and that no evidence had been produced which pointed to the innocence of defendants. Counsel for defendant's codefendant objected to this type of argument on the part of the prosecutor. Defendant now contends on appeal that the comments of the prosecutor constituted constitutional error under the rule of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] which forbids any comment by the prosecution on a defendant's silence or instructions by the court that such silence is evidence of guilt. Defendant claims that the statements of the prosecutor were in effect indirect comments on his silence. In pursuing this argument defendant particularly relies on the case of *Desmond* v. *United States* (1st Cir. 1965) 345 F.2d 225 [14 A.L.R.3d 718], a case dealing with a violation of federal law. In *Desmond* the prosecutor stated that the evidence in the case was "unimpeached and uncontradicted." The court held that this comment was improper under the rule of *Griffin*.[2]

In California, however, a different rule applies. The California cases recognize that the rule of *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, but hold that the rule does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. (*People* v. *Grant,* 268 Cal.App.2d 470, 475 [74 Cal.Rptr. 111]; *People* v. *Gioviannini,* 260 Cal.App.2d 597, 604-605 [67 Cal. Rptr. 303]; see *People* v. *Beghtel,* 239 Cal.App.2d 692, 695 [49 Cal.Rptr. 235]; *People* v. *Erickson,* 254 Cal.App.2d 395, 401 [62 Cal.Rptr. 108]; *People* v. *Montigo,* 248 Cal.App.2d 32, 38 [56 Cal.Rptr. 33]; see also *People* v. *Dillinger,* 268 Cal. App.2d 140, 144-145 [73 Cal.Rptr. 720].) The comments in the instant case reflect only on the state of the evidence. Therefore, we perceive no error in the argument of the prosecutor.

[2]Defendant also relies on cases decided in other state jurisdictions which have applied the *Griffin* rule to various indirect comments on the failure of a defendant to testify. (See *State* v. *Murphy,* 13 Ohio App.2d 159 [42 Ohio Ops.2d 273, 234 N.E.2d 619]; *Commonwealth* v. *Reichard,* 211 Pa.Super. 55 [233 A.2d 603].)

At the request of defendant, the trial court gave two instructions, as follows: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilty [sic] from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way.

". . . . . . . . . . . . . .

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support by itself a finding against him on any such essential element."

Defendant now urges that these instructions not only failed to cure the *Griffin* error urged by him with respect to the comments of the prosecutor, but that the instructions themselves may have constituted error in violation of the rule of *Griffin*.

In making this last mentioned contention, defendant relies on the case of *People* v. *Molano,* 253 Cal.App.2d 841 [61 Cal. Rptr. 821, 18 A.L.R.3d 1328], where defendant *objected* to the giving of an instruction similar to the first of the above instructions. The reviewing court held that the giving of this instruction "was tantamount to making a comment" proscribed by *Griffin.* (*Supra,* at pp. 846-847.) In *People* v. *Hernandez,* 264 Cal.App.2d 206 [70 Cal.Rptr. 330], the trial court gave the same instructions as in *Molano* at the request of the prosecution but without any objection by the defendant. There Justice Lillie observed that the United States Supreme Court has not extended its holding in *Griffin* to preclude the giving of the subject instruction since *Griffin* " 'forbids either comment by the prosecution on the accused's silence *or instructions by the court that such silence is evidence of guilt.*' " (P. 208; *Griffin* v. *California, supra,* 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229].)[3]

Although no case has been found proscribing the subject instructions when given, as here, at the request of defendant, we note that in *Bruno* v. *United States,* 308 U.S. 287, 292-294 [84 L.Ed. 257, 259-261, 60 S.Ct. 198], decided prior to *Griffin,*

---

[3]The *Hernandez* case was resolved on the basis that the error, if any, was harmless beyond a reasonable doubt.

it was held that the accused can require that the jury be instructed that his silence must be disregarded. There is ample authority in this state, moreover, that a defendant cannot effectively challenge the propriety of an instruction that he himself requested. (See *People* v. *Nye,* 63 Cal.2d 166, 173 [45 Cal.Rptr. 328, 403 P.2d 736], and cases there cited.) Accordingly, in the light of *Bruno,* and in view of the circumstance that defendant himself requested the subject instruction, he cannot be heard to complain.

*Griffin,* moreover, does not require reversal if this court is convinced that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824].) In the instant case the case against defendant was quite strong. He was found shortly after the robbery in flight in a vehicle which had been identified by the victim, wearing clothes described by the victim, in possession of a weapon identified as that used in the robbery, and also with cash in his trousers pocket which could have been taken from the station. Consequently, even if we assume for purposes of argument that it was error for the prosecutor to make the subject comments and for the court to give the subject instructions, we conclude that the error was harmless beyond a reasonable doubt.

### The Discussion of Possible Penalties

In the course of the prosecutor's argument to the jury the following discussion developed: first, counsel for the codefendant, while making an objection, stated that if his client were convicted he would "serve a life imprisonment"; next, the prosecutor said that counsel was "lying" in making such a statement about the effects of conviction; then the court pointed out that even if convicted, defendants would not get a life sentence; and next the prosecutor commented that "Most people end up with County Jail time."[4] Counsel for defendant moved for a mistrial on the basis of the prosecutor's statement to the jury that in all likelihood defendant would get county jail time. The court did not rule on this motion but admonished the jury: "The punishment is up to the Court, not to the District Attorney or the defendants. The Court will pass on the punishment. The jury is not to con-

---

[4]Penal Code section 213 provides that "Robbery is punishable by imprisonment in the state prison as follows: 1. Robbery in the first degree for not less than five years. 2. Robbery in the second degree, for not less than one year."

sider the punishment. It can be one of several things."

As a result of this exchange, defendant now argues that he was prejudiced since the speculation about penalties could have diminished the proper deliberative processes of the jury. Defendant contends that the jury might have considered the minimum penalty mentioned by the prosecutor in such a way as to resolve any doubts in favor of conviction. By analogy, defendant relies on the case of *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr 201, 388 P.2d 33, 12 A.L.R.3d 810] which held that it is prejudicial error in death penalty cases for a prosecutor to argue that the imposition of a life sentence might result in parole after only seven years. This rule, we note, has never been extended beyond those cases involving a possible death penalty.

Although we agree with the basic contention of defendant that matters of punishment are for the court and not for the jury, we do not agree that defendant was in any way prejudiced by the unnecessary colloquy summarized above. We reach this conclusion because of the care of the court in admonishing the jury to ignore considerations of punishment. Not only did the court admonish the jury at the time of the discussion, but, in the course of giving its regular instructions, also told the jury: "In arriving at a verdict in this case, you shall not discuss or consider the subject of penalty or punishment, as that is a matter which lies with the court and other governmental agencies, and must not in any way affect your decision as to the innocence or guilt of the defendant." Thus the jury was thoroughly advised as to the law on the subject. ■ In *People* v. *Aranda,* 63 Cal.2d 518, 524-525 [47 Cal.Rptr. 353, 407 P.2d 265] we find the applicable rule stated thusly: "In the absence of a showing of some positive act of misconduct it is presumed that the members of the jury performed their duties with fidelity to their oaths and that they obeyed the admonitions of the judge. [Citations.]" ■ In the present case there was no such showing of positive act of misconduct, and it must be assumed that the double admonition of the court sufficed to prevent any possible prejudice to defendant. We point out, moreover, that any error in this situation was invited by codefendant's counsel who first raised the entire question of the possible penalties at a time when the subject was in no way under discussion.

### *Evidence of Separate Crime by Codefendant*

During the trial the People called Bruce Brown as a wit-

ness. After a lengthy discussion of defense objections, Brown was allowed to testify that while working at night as a service station attendant on April 2, 1967 he had been robbed by two men, one of whom was armed with a shotgun. The codefendant in the instant case was identified as the armed man, but Brown could not identify the second man. He testified that the robber ordered him to remain in the restroom. Brown further testified that the raincoat found in the vehicle in the instant case was identical to that worn by the codefendant during the earlier robbery. At the time this evidence was admitted the court made the following statement to defendant's counsel in the presence of the jury: "this evidence is not admitted against Mr. Burns. It only applies against Mr. Sibert. . . . We can't strike the testimony. It just doesn't apply as to your client, because your client has not been connected with this particular holdup."

In the instructions to the jury the court made it clear that Brown's testimony was not introduced to prove "distinct offense or continual criminality" but only for such bearing "as it might have on the question of whether the defendant Charles Sibert is innocent or guilty of the crime charged against him in this action." The court further admonished the jury that evidence admitted against only one defendant could not be considered against the other.[5]

Defendant contends that the admission of the evidence of the prior crime by the codefendant was prejudicial to defendant since it indicated that he associated with persons who rob service stations and he argues that the motion he made for severance prior to the admission of the evidence should have been granted.[6]

We first consider the question of severance and note that the motion to sever was not made at the commencement of the trial, but at the time the subject evidence was proffered. Since the motion was not made before the commencement of

[5]The actual instruction of the court was as follows:

"In the trial of this case, certain evidence was admitted as against one of the defendants, but denied admission as against the other. At the time this evidence was received you were admonished that it could not be considered by you as against the other defendant in deciding his innocence or guilt. You are again instructed that you must not consider such evidence as against the other defendant."

[6]Defendant also contends that the evidence of the prior crime simply should not have been admitted at all since it was irrelevant because Sibert only participated in the instant case as a driver of the car. However, if the evidence was not admitted as to defendant and was not prejudicial to him, it is difficult to comprehend why it should matter

the trial it was not timely, and, accordingly, any objection to the consolidated trial is deemed waived and not subject to review on appeal. (*People* v. *Chambers*, 231 Cal.App.2d 23, 28 [41 Cal.Rptr. 551] ; *People* v. *Stadnick*, 207 Cal.App.2d 767, 774 [25 Cal.Rptr. 30, 99 A.L.R.2d 766] ; *People* v. *Massie*, 66 Cal.2d 899, 915 [59 Cal.Rptr. 733, 428 P.2d 869].)

Although, in view of the failure to make a timely objection the consolidation of the trial cannot be deemed prejudicial error, we can still consider whether an unfairness so gross has occurred as to deprive defendant of due process of law. (*People* v. *Chambers, supra*; *People* v. *Sarazzawski*, 27 Cal.2d 7, 11 [161 P.2d 934].) In *Chambers*, a conviction was reversed where it was concluded from an examination of the entire case that the defendant was probably convicted because of his association with his codefendant who was jointly indicted with the defendant for an assault upon a patient of a nursing home and who was also separately indicted for three separate assaults on the same person. In *Chambers* the evidence of the crimes of the codefendant was particularly disgusting; there were many instances when the evidence was not objected to; and as the trial progressed there were no admonitions to the jury confining the evidence of assaults by the codefendant to her case alone. The reviewing court held that although the trial court gave an instruction to the jury directing that evidence received against one defendant was not to be considered against any other defendant, this instruction was abstract and weak and failed to adequately protect the defendant from the damaging effect of prejudice-arousing evidence applicable only to his codefendant. This holding was based on the fact that the court did not specify which evidence was applicable against one defendant and which against the other.

In the instant case the trial court made clear to the jury at the time Brown's testimony was introduced that it applied only to defendant's codefendant. We thus have the ''firmly announced segregation of evidence'' which the reviewing court found lacking in *Chambers*. This segregation, when coupled with the instructions given to the jury at the

to him if it was irrelevant to the case against his codefendant. In any event, under the provisions of Evidence Code section 1101, subdivision (b), evidence of the commission of a crime may be admitted ''when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts.'' (See *People* v. *Peete*, 28 Cal.2d 306, 318 [169 P.2d 924]; *People* v. *Kelley*, 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947]; and see Witkin, Cal. Evidence (2d ed. 1966), § 341, p. 300.)

conclusion of the case as to limited purpose of the evidence, entitles us to presume, since there is no strong showing to the contrary, that defendant was sufficiently protected. (*People* v. *Santo,* 43 Cal.2d 319, 332 [273 P.2d 249]; *People* v. *Richardson,* 182 Cal.App.2d 620, 623 [6 Cal.Rptr. 61].) ▮▮▮ As stated in *People* v. *Norris,* 223 Cal.App.2d 5, 10 [35 Cal.Rptr. 507]: "In the absence of a strong showing to the contrary, it is presumed that instructions limiting the consideration of evidence to one defendant only sufficiently protects the other defendant's right to a fair trial. [Citation.]"

### *Consistency of the Verdict*

▮▮▮ In its verdict the jury fixed the degree of the crime as robbery of the first degree. It also found that defendant was not armed with a deadly weapon at the time of the commission of the offense. Defendant relying on *People* v. *Crittenden,* 14 Cal.App.2d 589 [58 P.2d 680], argues that since the jury found that defendant was not armed with a deadly weapon, the degree of the crime must be modified to robbery of the second degree. In *Crittenden,* the reviewing court modified the judgment by reducing a finding by the jury of first degree robbery to second degree where the jury had returned a verdict stating: " 'We find the charge of being armed contained in the first count not true.' " (Pp. 590-591.) The modification was based on the conclusion that this verdict meant the defendant was not armed at all at the time of the commission of the offense. (P. 592.) *Crittenden* is thus distinguishable from the instant case where the jury only found that, as charged in the information, defendant was not armed with a *deadly* weapon at the time of the commission of the offense, rather than that he was not armed at all.

▮▮▮ Robbery is divided into first and second degrees by the language of Penal Code section 211a which provides: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree." In *People* v. *Coleman,* 53 Cal.App.2d 18, 28 [127 P.2d 309], it is stated: "To fix it [robbery] as of the first degree, it is not necessary that the weapon should be a deadly weapon, if, in fact, it is a 'dangerous' weapon. (Pen. Code, § 211a.) Robbery committed with an unloaded pistol may be robbery of the first degree. The pistol need not be used or intended to be used as a firearm. If it is capable of use as a club or as an instrument to produce bodily harm it may be

classified as a 'dangerous' weapon." (See also *People* v. *Sherman,* 251 Cal.App.2d 849, 856 [60 Cal.Rptr. 198] ; *People* v. *Aranda,* 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].) Accordingly, it is well settled that an unloaded gun can be a dangerous weapon within the meaning of the statute defining robbery. (*People* v. *Raner,* 86 Cal.App.2d 107, 111 [194 P.2d 37] ; *People* v. *Ward,* 84 Cal.App.2d 357, 360 [190 P.2d 972].)

In the instant case Llamas testified that the robber carried a long-barrelled gun at the time of the robbery. At the time defendant was arrested a pellet gun was found in the car. Llamas identified this gun as the robbery weapon. Accordingly, under the state of the evidence the jury could conclude that this gun was used in the robbery and that it was a dangerous weapon. Proof that the robber was armed with a gun that could be a dangerous weapon would support a conviction of robbery of the first degree. This is true even though it would not establish that he was armed with a "deadly weapon." (*People* v. *Raner, supra,* 86 Cal.App.2d 107, 111-112.) Here the jury was properly instructed as follows: "Robbery by a person or by two or more persons any one of them being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree."[7] The verdict, as returned by the jury, was, therefore, sufficient. (See *People* v. *Quinn,* 94 Cal.App.2d 112, 116-117 [210 P.2d 280] ; *People* v. *Flohr,* 30 Cal.App.2d 576, 581 [86 P.2d 862] ; *People* v. *Tognola,* 83 Cal.App. 34, 37-38 [256 P. 455] ; and see *People* v. *Crittenden, supra,* 14 Cal. App.2d 589, 591.)

Although the jury was not required to specifically find in its verdict that defendant was armed with a "dangerous weapon," it was required to find whether he was armed with a "deadly weapon" because the information charged that defendant was armed with a "deadly weapon." Penal Code section 3024[8] provides for certain increased terms of sentence when a defendant is armed with a "deadly weapon" at the time of the commission of an offense. According to Penal Code section 969c whenever a defendant is armed under such circumstances as to make section 3024 applicable,

---

[7]The jury was also instructed that if they should find defendants guilty of robbery it was their duty to determine the degree thereof and to state that degree in their verdict. It was also instructed on the definitions of a "dangerous weapon" and a "deadly weapon."

[8]Penal Code section 3024 particularly defines what is meant by a "deadly weapon."

the fact that he was so armed must be charged in the accusatory pleading. The question of whether or not he was armed as alleged must then be tried by the trier of fact which tries the issue of the substantive offense. In view of the foregoing it is apparent that a defendant may be found guilty of first degree robbery if he is armed with either a "dangerous" or a "deadly" weapon, and that the significance of a specific finding in the verdict as to whether or not he is armed with a deadly weapon relates to whether he will suffer an increased penalty upon conviction. (See *People* v. *Lesterjette*, 40 Cal. App.2d 327, 329-330 [104 P.2d 844]; *People* v. *Sheets*, 251 Cal.App.2d 759, 766 [59 Cal.Rptr. 777].)     As noted in *Tognola, supra,* "To support a verdict of robbery of the first degree, it is not necessary that the information should . . . allege that he was armed with any deadly weapon at all." (83 Cal.App. 34, 38.)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 23, 1969.