Filed 1/31/14  P. v. Ryles CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>AMOS TERRILL RYLES,<br><br>        Defendant and Appellant. | E057564<br><br>(Super.Ct.No. RIF1104027)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Amos Terrill Ryles appeals from judgment entered following a jury

conviction for making criminal threats (Pen. Code, § 422;[1] count 1). The jury also found

true allegations that defendant had been convicted of a serious or violent felony (§§

1170.12, subd. (a)(1), and 667, subds. (c) & (e)(1)), and served two prior prison terms (§

667.5, subd. (a)). The jury found defendant not guilty of trying to prevent an executive

officer from performing her duty (§ 69; count 2). The trial court sentenced defendant to

11 years in prison.

Defendant contends the introduction into evidence of an inordinate amount of

prejudicial evidence of defendant's uncharged misconduct violated his constitutional

rights to due process and a fair trial. We disagree and affirm the judgment.

II

FACTS

Carey Haidl was designated as defendant's parole agent and began supervising

him in February 2011, after his release from prison on a parole violation. As defendant's

agent, Haidl was provided with defendant's case file containing information on his

conduct in prison and his criminal history. One of defendant's conditions of parole was

that he was to attend mandatory counseling at the Parole Outpatient Clinic (POC).

_____

[1] Unless otherwise noted, all statutory references are to the Penal Code.

Defendant's case was classified as "zero tolerance," which meant that any violation of parole would be addressed by the parole board.

On September 19, 2011, a POC psychologist advised Haidl that defendant had failed to attend one of his required counseling sessions. After missing the scheduled mandatory session, defendant appeared at Haidl's office at 2:45 p.m., on September 19, 2011. While defendant was waiting in the lobby, Haidl met with her supervisor, Calvin Holmes, and they decided that, because of the zero-tolerance policy, defendant would be arrested for missing the mandatory counseling session, in violation of his parole. Holmes arranged for a car to take defendant to jail. Parole agents Corry Logan, Carlos De La Torre, and Halmar Flores went into Haidl's office to assist with apprehending defendant.

Haidl went out to the lobby and escorted defendant to her office. On the way to her office, defendant told Haidl he missed his counseling session because his girlfriend wrote down the wrong time for his counseling appointment. Haidl told defendant he was being arrested for missing his counseling session. When they entered her office, she asked defendant to face the wall and place his hands behind his back. Defendant complied. Haidl then handcuffed him.

As defendant was being handcuffed, he became very upset, hostile, and angry. Defendant yelled, "Fuck you, Haidl, you're a fucking white bitch," and told Haidl he was "going to catch a murder case on you. You better carry your gun on you at all times." He repeated this twice. As defendant was escorted down the hall to a vehicle that would transport him to the jail, he continued to tell Haidl he was going to kill her, that he had ties to two prison gangs, the Black Guerrilla Family and the Black Panthers, and that she

3

should carry her gun at all times. Holmes, Logan, De La Torre, and Flores assisted Haidl in escorting defendant out to the car. As defendant was placed in the car, he continued yelling, "Fuck you, Haidl," and then said he was "going to take a shotgun to your head and blow [Haidl's] fucking brains out." He said this at least twice. He also said he was going to kill Haidl and her family, "and everything you [Haidl] stand for."

Haidl did not go with defendant to the jail. She was told not to because defendant was so upset with her. Holmes and Flores transported defendant to the jail. Logan and De La Torre followed in another car because defendant was so agitated. Because defendant was hostile, angry, aggressive, and threatening, Logan concluded it was necessary to use additional staff to transport defendant to the jail.

During the drive to the jail, defendant remained upset and hostile. Defendant continued making threats against Haidl. He said he knew "murderers inside," Haidl was going to have him "catch a murder case," and he was going to "blow her fucking brains out." Defendant claimed he knew murderers and was affiliated with prison gangs. At the jail, after Logan removed defendant from the car, defendant said, "Fuck all these white mother fuckers" and, "If I had a shotgun, I'd blow the mother fucker's head off."

Haidl testified at trial that she believed defendant had threatened her when she arrested him on September 19, 2011. She took his threats to her life very seriously. His threats made her fearful of him. She feared defendant would kill her and her family. Her fear was based on her awareness of defendant's criminal record, gang affiliations, and reports that defendant had threatened and committed battery on correctional officers. In addition, defendant had disregarded his parole conditions and the law. Haidl was also

4

aware of a prior threat defendant had made in September 2010, in which he threatened to beat up his previous parole agent, James Crabtree. Haidl testified that defendant's threats had affected her lifestyle by making her fearful.

Crabtree testified that, while he was arresting defendant, defendant threatened to beat him up. Defendant told Crabtree he had beaten up correctional officers before, and had "pull on the inside and outside" to the Black Guerrilla Family. Crabtree felt threatened and feared for his safety because defendant was a documented Crips gang member. As a consequence, defendant's supervision was transferred from San Diego to Riverside County and, as an additional parole condition, defendant was prohibited from contacting Crabtree and the parole office in San Diego.

III

EVIDENCE OF UNCHARGED MISCONDUCT

Defendant acknowledges that normally the failure to raise an evidentiary objection to inadmissible evidence is forfeited if not raised in the trial court. Defendant nevertheless argues that, in the instant case, his objection to evidence of his uncharged misconduct, raised for the first time on appeal, was not forfeited because the People's unwarranted introduction of the excessive, prejudicial evidence violated his constitutional rights to due process and a fair trial. As defendant notes, this court "can still consider whether an unfairness so gross has occurred as to deprive defendant of due process of law," where the trial court "failed to adequately protect the defendant from the damaging effect of prejudice-arousing evidence." (*People v. Burns* (1969) 270 Cal.App.2d 238, 252.)

5

*A. Background Facts*

The People moved in limine for admission of evidence of (1) prior threats by defendant made to parole agent James Crabtree; (2) post-incident threats by defendant made against Haidl while defendant was being transported to jail; and (3) defendant's criminal history. The trial court ruled the evidence was admissible under Evidence Code sections 352 and 1101, subdivision (b). The court concluded the evidence was relevant to show defendant's intent, Haidl's state of mind, her fear, and whether her fear was reasonable. Defendant's trial attorney did not object to the evidence, other than on hearsay grounds when Haidl was asked whether she knew of defendant's threat against Crabtree. The trial court overruled the objection.

Regarding the admissibility of defendant's criminal history, the court stated, "You are more afraid of a person who has a documented history of violence than not. You are more reasonably afraid of a person who is in prison [or on] parole than a person who has no criminal record. Those are all matters of common sense. You'll be allowed to introduce that." The trial court, however, excluded evidence of defendant's conviction for oral copulation when he was 15 years old and his sexual offender status, as unduly prejudicial and not relevant to the criminal threats charge.

At the end of the trial, the court instructed the jury on using caution when considering statements made by defendant after he left Haidl's office on September 19, 2011 (CALCRIM No. 358). The court also instructed the jury to use caution when considering evidence of uncharged offenses, such as defendant's threats toward Crabtree (CALCRIM No. 375). The court admonished the jury not to consider evidence of

6

uncharged offenses "for any other purpose except for the limited purpose of its effect, if any, on Agent Carey Haidl's state of mind.  [¶]  Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

*B.  Discussion*

Defendant's challenge to the uncharged misconduct evidence introduced against defendant lacks merit.  The probative value of the evidence outweighed its prejudicial effect.  The evidence was highly probative in proving the charged offense of making a criminal threat.  The elements of the crime of making a criminal threat (§ 422) are:  (1) The defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) defendant intended the statement to be perceived as a threat, even if the defendant did not intend to follow through with the threat; (3) the threat was so unequivocal, unconditional, immediate, and specific that it conveyed a gravity of purpose and an immediate prospect of the threat being executed; (4) the threat caused the victim to be in sustained fear for his or his family's immediate safety; and (5) the victim's fear was reasonable under the circumstances.  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

Evidence of defendant's uncharged misconduct was admissible under Evidence Code section 1101, subdivision (b), to show defendant's intent and the victim's state of mind (elements 2, 3, 4, and 5).  Under Evidence Code section 1101, subdivision (a), "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."  Evidence Code section 1101, subdivision (b), however, provides that other-crimes evidence is admissible

7

to prove "some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, . . .) other than his or her disposition to commit such an act." For evidence to be admissible to prove intent, the least degree of similarity between the uncharged act and the charged offense is necessary; that is, the uncharged misconduct is sufficiently similar to support the inference a defendant likely harbored the same intent in the charged offense. (*People v. Lindberg* (2008) 45 Cal.4th 1, 23*; People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

The admissibility of other-crimes evidence also depends on three principal factors: "(1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence, e.g., Evidence Code section 352. [Citations.]" (*People v. Sully* (1991) 53 Cal.3d 1195, 1224.) The evidence of uncharged misconduct in the instant case included evidence relating to defendant's prior robbery and drug convictions, parole violations, in-prison discipline, threats made to other correctional officers, and post-incident threats defendant made while being transported to the jail and at the jail. This evidence was material and highly relevant to establishing defendant's intent that Haidl perceive his statements as threats, and that Haidl reasonably feared defendant's threats would be carried out.

Much of the uncharged misconduct evidence in the instant case concerns threats similar to the charged criminal threats. In both instances in which defendant threatened Haidl and Crabtree, defendant's threats were made when the correction officers were apprehending defendant and he became outraged. Defendant angrily threatened to kill or

8

cause great bodily harm to Crabtree and Haidl, and to either carry out his threats himself or through other gang members with whom he was affiliated. The evidence of defendant threatening Crabtree was sufficiently similar to the charged offense for purposes of introducing it as evidence of defendant's intent that Haidl perceive his statements as threats.

Evidence of defendant's uncharged misconduct was also admissible to prove that (1) the threats caused Haidl to be in sustained fear for her and her family's immediate safety and (2) Haidl's fear was reasonable under the circumstances. Haidl testified that defendant's threats against her caused her to experience sustained fear for her and her son's safety. She installed an alarm system, put sticks in all her doors and windows, always carried a gun, and slept with a gun under her pillow. Haidl changed jobs in September 2012, and was no longer a parole agent because of the dangerous nature of the job. While testifying concerning her fear, she began to cry, indicating she had been traumatized by the threats. Haidl testified that when defendant made the threats, she believed he was serious and was actually threatening her life.

Evidence of Haidl's awareness of defendant's criminal history, parole violations, in-prison misconduct, and post-incident threats was admissible to show that Haidl's fear was reasonable. Such evidence included evidence that, when defendant threatened Haidl, she was aware of defendant's criminal history and his threats made to Crabtree. Haidl testified she was also aware of defendant's numerous parole violations (eight), which reflected defendant's willingness to disregard the law. Haidl was aware of defendant's involvement with gang members who were capable of carrying out defendant's threats.

9

Likewise, Crabtree testified that, when defendant threatened him, defendant was not just "talking shit," or joking. He was serious when he made the threats. Crabtree said he actually felt threatened, in part because of Crabtree's awareness of defendant's criminal history and gang affiliations. As a result of defendant's threats against Crabtree, defendant's case was transferred from Crabtree, in San Diego County, to a parole agent in Riverside County.

Defendant argues that, even though the evidence may have been relevant and he did not object to it, allowing the evidence resulted in a grossly unfair trial, in violation of his due process rights, because the evidence was excessively prejudicial and unnecessarily redundant. We disagree. "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*People v. Falsetta* (1999) 21 Cal.4th 903, 913, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 70.) Here, the evidence of defendant's uncharged misconduct was highly relevant to establishing defendant's intent and its effect on Haidl's state of mind, key elements of the charged criminal-threat offense, and defendant has not demonstrated that the evidence was so prejudicial as to render defendant's trial fundamentally unfair. (*Ibid.*)

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____
J.

We concur:


RAMIREZ_____
P. J.


KING_____
J.