[Civ. No. 14382.   Second Dist., Div. One.   May 19, 1944.]

NETTIE L. SEEGER et al., Appellants, v. A. J. ODELL
et al., Respondents.

Daniel A. Knapp for Appellants.

Hardy and Hardy, Carlos S. Hardy, Merrill Brown, Louis N. Whealton and O. A. Jacobs for Respondents.

WHITE, J.—This is an appeal by plaintiffs from an adverse judgment rendered by the Superior Court of Orange County, sitting without a jury. This is the second appeal taken in the case. Following the rendition of a judgment on the pleadings in favor of defendants an appeal was taken to the Supreme Court resulting in the reversal of said judgment. (*Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291].) For an epitome and analysis of plaintiff's second amended complaint, reference is hereby made to the foregoing decision of the Supreme Court. The nature of this action may be briefly summarized by saying that it is one by which plaintiffs seek to cancel an oil and gas lease; to set aside a foreclosure sale; to obtain an accounting of moneys allegedly received by defendants by way of royalties; and to quiet title in plaintiffs to the land in question, subject to such rights as may have been acquired by innocent and bona fide sublessees.

By their answers, defendants pleaded general denials and set up separate defenses of estoppel, waiver, laches, the statute of limitations, nonjoinder, and that plaintiffs were not the real parties in interest.

Because of its relevance to and bearing upon the case at bar, it seems advisable to here make mention of other litigation between the parties herein, because it relates to the land here involved which is sought to be recovered by plaintiffs.

In that regard the record reveals that in 1926 plaintiffs herein acquired title to a piece of realty 25 x 50 feet, located in the oil fields at Huntington Beach, California. On August 26, 1926, they executed an oil lease on the property to defendants herein McAdoo and Colter. Plaintiffs' land was part of two residential lots numbered 19 and 21, and on

September 28, 1926, the owners of the balance of the two lots, people named Wooton, executed a similar lease on their land to the above named defendants.

At the time of the execution of this lease with McAdoo and Colter by the Seegers, the former paid an outstanding obligation in the sum of $2,255, which was owed by plaintiffs and for which their land was security. In consideration of this payment, McAdoo and Colter received from the Seegers a note and mortgage on the land.

Both leases, with the Seegers and the Wootons, provided that they, as lessors, should receive a small royalty from an operating well owned by said defendants nearby. This roy-alty was to continue until oil was obtained from a well which was to be drilled upon the properties of plaintiffs and the Wootons. There was also contained in the leases a provision whereby the lessees could terminate all of their obligations by a quitclaim deed. On November 20, 1927, said lessees exercised their right of termination and executed a quitclaim deed. So far as plaintiffs herein are concerned, it appears that the royalty payments which were made prior to the date of the quitclaim deed were applied upon plaintiffs' note, which, by that time, had been reduced in the principal sum to $1,194.47.

On February 11, 1928, Mr. and Mrs. Seeger and the Wootons filed separate actions against McAdoo and Colter, charging them with fraud in connection with the execution of the aforesaid leases. These two actions were consolidated for trial, which resulted in a judgment for the defendants therein. Upon appeal, a judgment entered as applying to each case was affirmed and a petition for hearing in the Supreme Court was denied (*Wooton* v. *McAdoo,* 110 Cal.App. 48 [293 P.694]). As a result of this litigation, McAdoo and Colter obtained a cost judgment which was subsequently satisfied by an execution sale of the aforesaid land belonging to the Wootons. The right of redemption was not exercised. This sale assumes importance for the reason that plaintiffs in the instant case claim that the fraud herein consists in the defendants herein representing to them that the execution sale was of their property.

On May 12, 1930, and while the foregoing litigation was still pending, McAdoo and Colter assigned all of their interests in the Seeger note and mortgage to Mary Gibbs, a de-

fendant herein. On May 19, 1930, Mary Gibbs filed a foreclosure action against the Seegers, alleging that they had paid nothing on their note after the above mentioned royalty payments ceased. Mr. and Mrs. Seeger contested this action and again charged fraud. The trial resulted adversely to plaintiffs and such adverse judgment was affirmed by the District Court of Appeal, a hearing being denied in the Supreme Court (*Gibbs* v. *Seeger*, 130 Cal.App. 123 [19 P.2d 514]).

Upon the going down of the remittitur in the last named case, foreclosure sale of the Seegers' property was set for August 12, 1933. At such sale, Mary Gibbs bid the full amount of her foreclosure judgment, thereby eliminating a deficiency judgment against Mr. and Mrs. Seeger. There is evidence that such bid was the result of an agreement with the Seegers at the time they executed the lease involved in the instant action, to wit on July 27, 1933. Plaintiffs did not redeem this property and it is the foreclosure sale in regard thereto which took place August 12, 1933, that they seek to set aside in this action.

On July 27, 1933, Mary Gibbs, concededly acting as agent for defendants McAdoo and Colter, together with plaintiffs herein, executed an oil and gas lease of plaintiffs' property to defendant Odell. This lease is the usual and ordinary oil and gas lease, under the terms of which plaintiffs were to receive a royalty interest of $2\frac{1}{2}$ per cent, and Mary Gibbs an interest of $12\frac{1}{2}$ per cent.

On August 1, 1933, defendant Odell assigned his lessee's interest to the Two and One Oil Company Ltd. The last named company was made a defendant in this action, but, by reason of a stipulation between it and plaintiffs, was not required to present an active defense.

After the assignment of August 1, 1933, drilling was commenced on the land of the Seegers and the Wootons acquired by defendants McAdoo and Colter under the above mentioned execution sale. Oil was obtained and plaintiffs received royalties under the lease of July 27th amounting to $1,532.70. In August, 1934, plaintiffs gave all of their royalty payments to one Frances T. Robertson, the sister of plaintiff Nettie L. Seeger, the latter of whom it seems had for many years acted as the agent and advisor of the plaintiffs.

On September 20, 1934, plaintiffs herein, by deed, granted to Frances T. Robertson an undivided one-half of one per

cent interest in all mineral substances in the land, and, on the same date, Mrs. Robertson made a similar deed of the same interest to one Verna Castaman.

On October 19, 1934, plaintiffs assigned to S. Seeberg and Hazele M. Seeberg the remaining two per cent of their royalty interest under the lease of July 27, 1933. Because of the claim that none of these interests have been reserved by plaintiffs and further because neither Verna Castaman, the Seebergs, nor the successors in interest of either or both of them, if any, were made parties to the present action, it is defendants' contention that plaintiffs herein are not the real parties in interest. On July 17, 1936, plaintiffs herein served upon defendants notice of rescission of the lease of July 27, 1933, and shortly thereafter filed the action with which we are here concerned.

Plaintiffs' cause of action in the case at bar is grounded upon the claims contained in their second amended complaint that at the time of the execution of the oil and gas lease they were ''an extremely poor and aged couple''; that prior to such execution of the lease they were cognizant of the cost judgment in the *Wooton* v. *McAdoo* action, *supra,* but were unable to pay it because of ''financial reverses.'' That defendants A. J. Odell and Mary Gibbs represented to plaintiffs that they were friendly with the latter and wanted to help them; that, to that end, said defendants requested plaintiffs to confer with them concerning the property; that at the conference, defendants McAdoo, Colter, Gibbs and Odell were represented by an attorney; that the latter told plaintiffs that, as an attorney, he had superior knowledge of many facts concerning the land and that plaintiffs could rely upon all he had to say; that such attorney further represented that defendants McAdoo and Colter were going to submit to the above mentioned foreclosure sale which had been set for August, 1933, and would not exercise their equity of redemption. According to plaintiffs' contentions, defendants' attorney went on to assure plaintiffs that he and his clients were their friends and would make an unselfish proposal for the purpose of enabling the plaintiffs to receive some return from the land, out of which they would otherwise get nothing. The proposal made by the attorney was that plaintiffs join with defendant Mary Gibbs in a lease of the land to defendant Odell for the purpose of drilling for oil, the understanding

being that plaintiffs would receive a specific royalty from the oil produced.

Plaintiffs herein further contend that they believed the representations made by defendants' attorney that their land had been sold at an execution sale to defendants Colter and McAdoo. That solely because of this belief they joined in executing the lease to Odell and refrained from making any attempt to pay the mortgage debt or to exercise their equity of redemption after the foreclosure sale, notwithstanding that, during this period, several persons offered to lease the land from them and to advance sufficient money to cover the mortgage indebtedness. Plaintiffs further contend that after defendant Mary Gibbs bought in the property at the foreclosure sale in August, 1933, defendant Odell took possession under his lease and drilled a well from which he received profits in excess of $100,000. Plaintiffs assert that in truth and in fact no execution had actually been levied on their portion of the land and that the representation that the land had been sold to defendants McAdoo and Colter was false and that the falsity thereof was known to the attorney and his clients; that it was made to induce plaintiffs to refrain from paying the mortgage indebtedness or from exercising their equity of redemption and for the further purpose of inducing them to join in leasing the property to Odell. Plaintiffs alleged that they did not discover the falsity of the representations until May of 1936, and advanced as reasons therefor the fact that the land was situated in a city and county at some distance from the place where plaintiffs resided; that they are both elderly; that neither drove an automobile or possessed one; and that they had no reason to suspect, prior to the last mentioned date, that the representations were false.

It is at once apparent that the gravamen of plaintiffs' cause of action in the instant case is the alleged falsity of the claimed representations made to them by defendants that the former had lost all their right, title and interest in and to the property in question by reason of the execution sale thereof. Upon this issue the court found against plaintiffs, and such finding is attacked upon this appeal as not being supported by the evidence. ■ When a judgment is assailed as being unsupported by the evidence, the power of an appellate tribunal in passing upon that question begins and ends with the determination whether there is in the record any substantial evidence, contradicted or uncontradicted, to sup-

port the ultimate issue involved. Reviewing judges obviously being in no position to determine the credit which should be given to witnesses or to weigh their testimony, the Legislature, in accordance with the constitutional mandate (Cal. Const., art. VI, § 19) has provided that the triers of fact shall be the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and, except in those instances where it is declared by law that evidence shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061), the triers of fact are the judges of the effect and value of evidence addressed to them.

Only in cases where it may justly. be held that upon its face the evidence is insufficient to support the ultimate issue involved may an appellate court review evidence. Manifestly, in such a case, the review is not of a question of fact, but purely one of law. Neither does the fact, as claimed by appellants, that testimony in behalf of respondents discloses circumstances which are unusual, justify review thereof by the appellate court, which does not sit as a jury to determine the issues of fact, the credibility of witnesses, or the weight to be given their testimony.

In the case at bar, appellants' counsel stated to the trial court, "So far as the credibility of witnesses are concerned, the case is directly one line of witnesses contradicted by another."

In connection with the meeting between appellants, their attorney, certain of respondents and the latters' attorney, it is true that both of the appellants and Mrs. Frances T. Robertson testified at the trial that at such conference respondents' attorney told all present, including appellants and their attorney, that title to the property in question had been lost to appellants through the execution sale; that said attorney for respondents was aware of this fact because he personally handled the execution sale for respondents McAdoo and Colter; and that said respondents were, because of their friendly interest in appellants, making the latter a virtual gift of the 2½ per cent royalty interest by permitting them to join in the lease. However, respondents' attorney categorically denied making the foregoing statements, or any representations similar thereto. In this testimony such attorney was corroborated by respondent Odell. Furthermore, appellants' own attorney, testifying as a witness, added verity to the testi-

mony of respondents' attorney when, as a witness, he testified as follows:

"Q. Now, in all fairness, Mr. Webster, did Mr. Neblett say to you, or in your presence to anybody else, the Seegers have lost all interest in this property because of an execution sale and sheriff's deed and they have no interest in this property, or any words to that effect?

"A. No, he didn't make any such statement as that directly to me.

"Q. Did you hear him make it to anybody else in your presence?

"A. Not as you put it.

"Q. Well, I said 'to that effect.'

"A. I would have to answer that 'No.' . . ."

With reference to the above mentioned conference, respondents' attorney testified that the proposition offered by him to appellants and their lawyer was that, if appellants would join in the execution of the lease, they would receive a 2½ per cent royalty and that respondent Mary Gibbs would bid the full amount of her foreclosure judgment at the foreclosure sale, thereby protecting appellants against a deficiency judgment. Also, appellants' attorney, himself, testified that at the conference he asked respondents' attorney "if he would give me some assurance in writing to the effect" that "they would buy the property in for the full amount of the mortgage debt" and "he did give me a writing." Therefore, the conclusion reached by the trial court cannot be said to be without support based upon any rational view of the testimony. Every intendment being in favor of the finding made upon the question of fraud, we are not authorized under the circumstances present to overthrow such finding.

The trial court also found "that it is not true that the plaintiffs were extremely poor, or at all poor, but on the contrary were well able financially to undertake any resonable inspection of the above described property" and "that neither of the plaintiffs were gullible nor ignorant;" that a few days prior to July 27, 1933, appellants undertook to make an investigation of their interests in the real property in question, and of the desirability of executing the oil and gas lease as proposed by respondent Odell; and for the purpose of such investigation appellants employed an attorney. While these findings may also be said to be based upon conflicting evidence, nevertheless, there is in the record testimony which of itself coupled with inferences fairly deducible therefrom,

warranted the trial court in making the findings complained of. Under the familiar rules hereinbefore stated, we cannot, therefore, disturb the conclusion arrived at by the court, who, as a necessary corollary to the rules hereinbefore announced, was authorized, if it felt warranted in so doing, after full and fair consideration thereof, to reject the testimony which might have been contradictory to that given by respondents and to disbelieve the testimony of appellants and Mrs. Robertson given in connection with facts immediately surrounding and leading up to the execution of the lease here in question, in connection with the execution of which appellants' cause of action for fraud and misrepresentation must stand or fall.

It would unduly prolong this opinion to here set forth other findings challenged by appellants, because the foregoing findings are determinative of the ultimate issue involved herein, and consequently the judgment rendered would not be adversely affected by findings made upon other issues which, in the light of the foregoing findings, become subordinate to the main and decisive issue of alleged fraud in connection with the execution of the oil and gas lease here under consideration.

Finally, appellants question the correctness of certain rulings of the trial court on the admissibility of evidence, contending that such adverse rulings were prejudicial to their rights. In this regard, the record discloses that during the cross-examination of the attorney who represented appellants in connection with the execution of the lease, a letter was produced, written by said attorney, wherein he stated the purposes for which he was employed by appellants in regard to the execution of said lease. Objection was made to any question in connection with such letter on the ground that the communication was privileged under section 1881, subdivision 2, Code of Civil Procedure. In overruling the objection no error was committed by the trial court, for the record clearly indicates that the testimony objected to was, upon other occasions, the subject of discussion in the presence of others than appellants who were the clients of the witness. Furthermore, appellants themselves had testified as to the subject matter referred to in the letter, as had the witness himself on direct examination by appellants' counsel.

Objection was also interposed to a letter written by appellants' attorney on January 1, 1936. This letter contained statements by the attorney respecting what was said

in the July, 1933, conference hereinbefore referred to, and which took place in the office of respondents' attorney, and such statements were at variance, it was claimed, with what the writer of the letter testified to as a witness. Reference was made to the letter for the purpose of refreshing the memory of the witness and in an attempt to impeach certain of his testimony given on his direct examination. Objection was made on the ground that the letter was a privileged communication (Code Civ. Proc., § 1881, subd. 2). The subject matter of the letter had, however, been openly and publicly discussed and testified to. We perceive no error in the ruling of the trial court permitting the reference to be made to this letter for the purpose of refreshing the recollection and attempting impeachment of the writer thereof as to the matters therein contained which had theretofore been publicized and referred to while the witness was testifying.

For the foregoing reasons the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied June 9, 1944, and appellants' petition for a hearing by the Supreme Court was denied July 17, 1944.