[Crim. No. 853.   Fourth Dist.   Aug. 25, 1952.]

THE PEOPLE, Respondent, v. HARMON WALTON, Appellant.

William M. Martin for Appellant.

Edmund G. Brown, Attorney General, Frank Richards, Deputy Attorney General, and A. Hugo Pearson, District Attorney (Kings), for Respondent.

BARNARD, P. J.—The defendant was charged with burglary and with rape. A jury found him guilty of burglary of the first degree, and of assault with intent to commit rape. He has appealed from an order denying his motion for a new trial and from the judgment.

The complaining witness, Mrs. Mustin, lived at the intersection of two roads about ten miles west of Lemoore. Her husband was employed as an irrigator in a field some distance away, working nights from 7 p. m. to 7 a. m. Her husband's cousin, with his family, lived in a house about 100 yards to the rear of complainant's home.

On the night of Monday, July 16, 1951, Mrs. Mustin was in bed with her three children, aged 3 years, 2 years, and 4 months, respectively. The baby lay with its head beside the mother and the other two children were at the foot of the bed. About 3 a. m. Mrs. Mustin was awakened and found a man standing beside the bed with a knife in his hand. This man, threatening to kill her and choking her, overcame her struggles and raped her. During the struggle the older child and the baby woke up and cried, but the 2-year-old did not awaken. The man was barefooted and left through a window on the west side of the house, going out to a car which was parked on the road in front. It was a clear moonlight night and there were no curtains on the windows. Mrs. Mustin was able to see her assailant in the room, and after he left she saw him go by her window and out to the car. She saw him get in the car and drive away without turning on its lights. She saw that the car was one which "sloped off the back," and she testified that

it started off with a roar as if it had one of those "smitties" on it. She immediately went to the home of her husband's cousin about 100 yards away, arriving there about 3:15 a. m. She had bruises on both sides of her neck. He took her to town where they reported to the officers about 4 a. m.

The next morning the officers found bare footprints leading from the point where the car had been parked to a window at the southeast corner of complainant's home, which appeared to be the point of entry since that window had a defective screen on it. These footprints indicated that the person making them had been walking on tiptoe. Another line of footprints, indicating that the person had walked flatfooted, led from the west window of the house, where the attacker had emerged, back to the point where the car had been parked. The officers took a plaster impression of some of the footprints.

The defendant was arrested on July 25. Shortly thereafter he told a deputy district attorney that on the night of Monday, July 16 he had attended a double-header baseball game at Lemoore with a woman friend; that later that evening he went out into the country, pulled his car off the road and went to sleep, taking off his shoes; that he could not remember just where he slept; and that he then went on to his home at Kerman, 40 miles west of Lemoore, arriving there just before dawn on Tuesday morning. The defendant admitted that he had visited these premises about 6:15 or 6:30 a. m. on Monday, July 16. He stated that he did not have his shoes on when he first got out of his automobile, but claimed that he went back and put his shoes on when he saw someone was living in the house. At that time, he went past the complainant's house and to the house occupied by the cousin. When the cousin came out and asked what he wanted, he asked who owned the car standing at the complainant's home. The cousin replied that it belonged to his cousin, who was working nights, and that he would be off work at 7 a. m., if he wanted to see him. The defendant did not wait to see him. On Thursday, July 19, the defendant drove to Willitts, some 300 miles away, where he traded his 1949 car for a 1940 model of the same make. As he was returning home the next Sunday the 1940 car broke down near Sacramento, and he hitchhiked home and returned for the car later.

At the trial six months later, the defendant testified that he had gone to a show in Kerman on the night of Monday,

July 16, and that he had checked up on what the show was that night "so I know by that it was Monday night I seen the show." He also stated that he did not know where he was that night; that "I might have been in the show in Kerman"; and that "I didn't know I was going to be picked up on this mess, I wouldn't have been picked up without an alibi."

The appellant first contends that the evidence is insufficient to support the judgment. It is argued that the story of the attack told by Mrs. Mustin is inherently improbable, and that it could not have occurred in the manner and with the struggle she described, especially with three children in the bed. It is further contended that he was not sufficiently identified as the assailant, and that the evidence as a whole proves that he was not the man in question, if it be assumed that an attack occurred.

The argument that the story of Mrs. Mustin is inherently improbable is based on portions of her story and on conflicting inferences which it is claimed might be drawn. Mrs. Mustin was an uneducated woman and, in view of her natural fright at the time, it is not surprising that some inconsistencies appear and that she did not observe some things which might well have been observed at a calmer moment. ■ Testimony is not inherently improbable unless it appears that the things related could not have occurred. ■ Inconsistencies and contradictions present questions of fact for the trial court, where portions of the testimony may be believed and other portions disbelieved. ■ On appeal, the portion which supports the judgment must be accepted. (*People* v. *Thomas,* 103 Cal.App.2d 669 [229 P.2d 836].) The evidence is entirely sufficient in this regard.

■ There is ample evidence supporting the jury's finding with respect to the identity of the appellant as the one who committed these offenses. Mrs. Mustin identified his picture and identified his voice before she saw him. She then picked him from a line-up of several men with somewhat similar general appearance. She positively identified him at the preliminary and at the trial. This result is in no way affected by the fact that at one time she tentatively identified the appellant's brother, and said that his voice "sounds a lot like it." The jury had an opportunity to observe the brother, and no more than a conflict appears at best. The description given by Mrs. Mustin of the looks and sound of appellant's car were shown to be applicable

to the car he was then driving. Disregarding conflicts, the evidence indicates that the tire tracks, found where the car was parked in front of the complainant's house, were made by the appellant's car. One smooth tire had been changed from the front to the rear, but the appellant's mother testified that he changed a rear tire on his car on July 17. The fact that the appellant traveled a long distance and traded his car for a poorer car shortly after the occurrence, with the explanation he gave therefor, is extremely suggestive. The footprints leading from where his car was parked to one window of the house and from another window back to the car strongly support the jury's verdict. The evidence, while conflicting, is such as to leave little room for doubt that these tracks were made by the appellant. The appellant admitted that he slept for a time that night in what must have been this general area, and that he took his shoes off. He admittedly went to these premises the morning before, he observed that the house was occupied and had an opportunity to see the woman on the bed, and he was told that the man living there worked nights and would not return until after 7 a. m. His story of why he went to these houses, and what he did there, would naturally tax the credulity of any juror. It is perfectly apparent that he did not tell the truth on the witness stand, and this fact must have been obvious to the jury. The conflicting evidence and inferences relied upon by the appellant must be disregarded. We have read the entire record, and the evidence amply sustains the judgment.

It is next contended that the court erred in restricting appellant's cross-examination of Mrs. Mustin. This contention is without merit. The cross-examination of her takes up more than 85 pages of the transcript, and all of the matters complained of were fully brought out in evidence. The court was too patient in this regard and, at the times complained of, was merely insisting that repetition and purely argumentative questions should be discontinued.

It is finally contended that the district attorney was guilty of prejudicial misconduct. This contention is without merit. The matters referred to are trivial and disclose no misconduct, prejudicial or otherwise.

The order and judgment are affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied September 5, 1952.