[Crim. No. 11314. First Dist., Div. One. Nov. 21, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON HERBERT BLUM, Defendant and Appellant.

**COUNSEL**

Alan B. Exelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, John T. Murphy and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendant appeals from a judgment of conviction on a jury verdict finding him guilty of first degree robbery (Pen. Code, § 211). The main issue is whether the pretrial identification procedures were so suggestive as to deny defendant due process of law.

On March 22, 1972, at about 9 p.m., Thomas Paganini, a liquor store proprietor, was alone in his store. His back was to the front door when he heard someone enter the store. When he turned around he saw a man holding his left hand over his mouth and a gun in his right hand. The gun was pointed at Paganini. The man demanded that Paganini open the cash register, and when he did, the man came around behind the counter and took about $70 from the cash register with his left hand. As he did so he was at one time within a foot and a half from where Paganini was standing. After taking the money the robber departed. He was in the store approximately two to three minutes.

Paganini summoned the police to whom he described the robber as white, about 28 or 29 years of age, about 5 feet 9 or 10 inches tall, weighing about 200 pounds, with a round shaven face that had rough or pockmarked skin and a small moustache, with hair that was light brown and cut short but with sideburns that came to the middle of the ear, and wearing an "orangy-beige" button-up sweater.

On April 7, 1972, Sergeant Michael Maehler of the San Jose Police Department brought six colored photographs of individuals to Paganini's store and asked him if he could identify anyone. Paganini was unable to do so. Defendant's photograph was not included among these photographs.

Maehler returned to Paganini's store on April 12, 1972, with another group of six photographs. These were black and white, and they included a photograph of defendant taken on April 11, 1972. Maehler handed these photographs to Paganini, asked him to study them, and inquired whether he recognized anyone depicted in the photographs. After looking at the photographs from 15 to 20 minutes, Paganini picked one of the photographs as that of the man who robbed him on March 22. While looking at the photographs, Paganini placed a match cover over the lower part of the face in the photograph selected by him for the purpose of simulating the holding of the hand over the mouth as the robber had done on the night of the robbery.

On April 20, 1972, Paganini attended a lineup at the sheriff's office where he identified defendant among the persons in the lineup as the man who had robbed him. At that time Paganini indicated to Maehler that the hair of the person he identified was longer than it was on the night of the robbery.

At the trial Paganini made an in-court identification of defendant as the man who robbed him. The defense was an alibi to the effect that defendant was elsewhere on the night of the robbery. Defendant testified that he had not cut his hair between March 22 and April 11, 1972, but that he had cut his moustache off because of jail regulations. The latter testimony was rebutted by a prosecution witness who testified that there was no such jail regulation appertaining to defendant's custody. Maehler, testifying on rebuttal, stated that he advised defendant on April 18 that he would be in a lineup on April 20, that at the time of said notification defendant had a moustache, and that when defendant appeared for the line-up the moustache had been shaved off.

■ Adverting to the pretrial photographic procedure, we observe that the trial judge determined preliminarily that such procedure was fair and that therefore the courtroom identification was not the result of an impermissibly suggestive pretrial photographic procedure. (See *Simmons* v. *United States,* 390 U.S. 377, 386-389 [19 L.Ed.2d 1247, 1254-1256, 88 S.Ct. 967]; *Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1205-1206, 87 S.Ct. 1967]; *People* v. *Feggans,* 67 Cal.2d 444, 448-449 [62 Cal.Rptr. 419, 432 P.2d 21]; *People* v. *Citrino,* 11 Cal.App.3d 778, 783 [90 Cal.Rptr. 80]; *People* v. *Neal,* 271 Cal.App.2d 826, 831 [77 Cal.

Rptr. 65] [cert. den., 396 U.S. 946 (24 L.Ed.2d 249, 90 S.Ct. 387)].) We perceive no error in this determination. Accordingly, it was not necessary for the People to show that the courtroom identification had an origin independent of the photographic procedures, the matter of unfairness, if any, being one for the jury's resolution in the face of any evidence of unfairness produced by defendant. (*People* v. *Rodriguez,* 10 Cal.App.3d 18, 31 [88 Cal.Rptr. 789]; *People* v. *Neal, supra,* at p. 832.)

■ We observe, moreover, that the ultimate question in each instance is whether under the totality of the circumstances a defendant was deprived of due process because of an improper pretrial identification. (*Neil* v. *Biggers,* 409 U.S. 188, 199 [34 L.Ed.2d 401, 411, 93 S.Ct. 375]; *People* v. *Burns,* 270 Cal.App.2d 238, 244-245 [75 Cal.Rptr. 688].) A violation of due process occurs only when the pretrial procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Neil* v. *Biggers, supra,* at pp. 199-200 [34 L.Ed.2d at pp. 411-412]; *Simmons* v. *United States, supra,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253]; *Stovall* v. *Denno, supra,* 388 U.S. 293, 302; *People* v. *Lawrence,* 4 Cal.3d 273, 280 [93 Cal.Rptr. 204, 481 P.2d 212] [cert. den., 407 U.S. 909 (32 L.Ed.2d 682, 92 S.Ct. 2431)].)

■ In the instant case we find no substantial likelihood of misidentification. The record discloses that immediately after the robbery Paganini gave police a detailed description of the robber whom he had observed from distances as close as 1½ feet. Sixteen days after the robbery (April 7) Paganini was shown a group of six photographs none of which included defendant's picture. Paganini stated that he was unable to identify the robber in any of these photographs. On April 12 he was shown six more photographs from which he picked defendant's picture. Apart from the photographs themselves nothing in the record indicates that Sergeant Maehler in any way suggested to Paganini, who, if anyone, the suspected robber was.

Defendant argues that the photographs were unduly suggestive because only one showed a person with pockmarks on his face and because the photographs were dissimilar. As to pockmarks, such are not clearly shown in the photograph of defendant. With respect to the alleged dissimilarity of photographs, we observe that while the photographs may appear dissimilar, the individuals depicted in several of them fit the general description of the robber as given by Paganini to the police, i.e., "roundish" face, moustache, receding hairline, and short hair. We observe, moreover, that each of the men depicted in the photographs appears to be of the same general age.

Defendant also contends that he was denied due process of law on the basis that the pretrial lineup was unnecessarily suggestive. This contention is also governed by the principles enunciated in *Neil*. ■ The fairness of a lineup is to be assessed in the light of the totality of the circumstances. (*Neil* v. *Biggers, supra,* 409 U.S. 188, 199; *Stovall* v. *Denno, supra,* 388 U.S. 293, 302; *People* v. *Bisogni,* 4 Cal.3d 582, 587 [94 Cal.Rptr. 164, 483 P.2d 780]; *People* v. *Bauer,* 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [cert. den., 400 U.S. 927 (27 L.Ed.2d 187, 91 S.Ct. 190)].) As stated in *Bisogni,* "[t]he controlling question is whether the lineup was so unnecessarily suggestive and conducive to a mistaken identification that admission of evidence of identifications based thereon resulted in a denial of due process." (At p. 585.)

■ In this case the totality does not demonstrate unfairness. The lineup was composed of six men each similarly dressed, of the same general height and of approximately the same age. The facial contour of four of the men was essentially similar and three of them had moustaches. The composition of the lineup does not appear to be unfair. Paganini identified defendant even without his moustache. He observed that defendant's hair was longer than at the time of the robbery. This was a pertinent observation since 29 days had elapsed from the day of the robbery to the day of the lineup. These circumstances afford a strong inference that Paganini's identification at the lineup was not tainted by the previous photographic identification procedure.

In sum, there is sufficient evidence to warrant the conclusion that Paganini's in-court identification of defendant was not tainted by either the pretrial photographic procedure or the pretrial lineup. The totality of the circumstances, supported by substantial evidence, justifies the trial court's determination that Paganini's in-court identification of defendant as the robber was based on his observations at the time of the robbery.

At the trial defendant moved to exclude from evidence the photograph of defendant which Paganini had picked out from the group of photographs shown him on April 12. This motion, which the court denied, was predicated on defendant's contention that the photograph had been taken after he was illegally arrested for a narcotics violation. Such a contention was disposed of in *People* v. *McInnis,* 6 Cal.3d 821, 825-826 [100 Cal.Rptr. 618, 494 P.2d 690] (cert. den., 409 U.S. 1061 [34 L.Ed.2d 513, 93 S.Ct. 562]),

where it was held a photograph originally taken of a defendant as a result of an illegal arrest was not inadmissible as "fruit of the poisonous tree."

The judgment is affirmed.

Sims, J., concurred.

**ELKINGTON, J.**—I concur with my colleagues in the affirmance of Blum's judgment of conviction. But the concurrence is reluctant and compelled by the force of *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], holding that "decisions of [the Supreme Court] are binding upon and must be followed by all the state courts of California. . . ."

There is no disagreement with the expressed conclusions of my esteemed colleagues. But applying long recognized high authority, their opinion impliedly follows the *"any* substantial evidence" rule, and determines that Blum's conviction was, *as a matter of law,* supported by the evidence at his trial. This rule although repeatedly confirmed, and never disapproved, by the state's Supreme Court is nevertheless, in my opinion, not the law of California, at least on criminal appeals.

The reason:

It is not permitted by the "due process" clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

A reviewing court has the duty in a proper case to determine whether a guilty verdict is supported by evidence. It does not weigh the evidence, nor does it pass upon the credibility of witnesses; such considerations are for the trier of fact. The function of the appellate court is to determine whether, *as a matter of law,* the verdict is supported by the evidence. (*People* v. *Martin,* 12 Cal.2d 466, 474 [85 P.2d 880]; *People* v. *Collins,* 117 Cal.App.2d 175, 180 [255 P.2d 59] [cert. den., 346 U.S. 803 (98 L.Ed. 334, 74 S.Ct. 33); overruled on other grounds, *People* v. *Elliot,* 54 Cal.2d 498, 504 (6 Cal.Rptr. 753, 354 P.2d 225)].)

For the appellate court's guidance there has evolved what is reasonably and appropriately called the *"any* substantial evidence" rule.

Perhaps the best known statement of California's *"any* substantial evidence" rule is found in *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805], where the court said: "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an

appellate court *begins* and *ends* with the determination as to whether there is *any substantial evidence* [italics added], contradicted or uncontradicted, which will support the finding of fact. . . . When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]"

The rule is equally applicable in criminal cases. (See *People* v. *Bassett,* 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Wheeler,* 30 Cal.App.3d 282, 292 [106 Cal.Rptr. 260]; *People* v. *Henning,* 18 Cal. App.3d 872, 874, fn. 1 [96 Cal.Rptr. 294]; *People* v. *Turner,* 267 Cal.App.2d 440, 442 [73 Cal.Rptr. 263, 38 A.L.R.3d 940].)

It is sometimes expressed differently and in this manner: "An appellate court will not reverse a criminal conviction unless it clearly appears that under *no hypothesis whatever* is the evidence sufficient to support the judgment. [Citation.]" (Italics added.) (*People* v. *Camerano,* 260 Cal. App.2d 861, 865 [67 Cal.Rptr. 446] [overruled on other grounds, *People* v. *De Santiago,* 71 Cal.2d 18, 30 (76 Cal.Rptr. 809, 453 P.2d 353)]; see also *People* v. *Bard,* 70 Cal.2d 3, 5 [73 Cal.Rptr. 547, 447 P.2d 939]; *People* v. *Sullivan,* 255 Cal.App.2d 232, 236 [62 Cal.Rptr. 887]; *People* v. *Domingo,* 210 Cal.App.2d 120, 124 [26 Cal.Rptr. 315]; *People* v. *Powell,* 187 Cal.App.2d 709, 712 [10 Cal.Rptr. 116]; *People* v. *Milo,* 89 Cal.App.2d 705, 707 [201 P.2d 556].)

But perhaps the more often reiterated statement of the rule is: *"On appeal that part [of the evidence] which supports the judgment must be accepted, not that part which would defeat or tend to defeat it. . . ."* (Italics added.) (*People* v. *Hrisoulas,* 251 Cal.App.2d 791, 796 [60 Cal. Rptr. 80]; see also *People* v. *Norris,* 223 Cal.App.2d 5, 11 [35 Cal.Rptr. 507]; *People* v. *Zurica,* 225 Cal.App.2d 25, 31 [37 Cal.Rptr. 118] [cert. den., 379 U.S. 863 (13 L.Ed.2d 66, 85 S.Ct. 126)]; *People* v. *Causey,* 220 Cal.App.2d 641, 654 [34 Cal.Rptr. 43] [cert. den. 376 U.S. 959 (11 L.Ed.2d 976, 84 S.Ct. 981)]; *People* v. *Rosales,* 213 Cal.App.2d 531, 534 [28 Cal.Rptr. 771]; *People* v. *Tereno,* 207 Cal.App.2d 246, 251 [24 Cal.Rptr. 501]; *People* v. *Sanders,* 206 Cal.App.2d 479, 482 [23 Cal. Rptr. 725]; *People* v. *Murray,* 198 Cal.App.2d 805, 809 [18 Cal.Rptr. 280]; *People* v. *Rodriguez,* 169 Cal.App.2d 771, 777 [338 P.2d 41]; *People* v. *Justice,* 167 Cal.App.2d 616, 621 [334 P.2d 1031]; *People* v. *Bahara,* 159 Cal.App.2d 160, 161-162 [323 P.2d 453]; *People* v. *Hamilton,* 127 Cal.App.2d 533, 534 [274 P.2d 175]; *People* v. *Hill,* 126 Cal. App.2d 378, 380 [272 P.2d 113]; *People* v. *Dragoo,* 121 Cal.App.2d 322, 324 [263 P.2d 90]; *People* v. *Adams,* 119 Cal.App.2d 445, 449 [259 P.2d 56]; *People* v. *Walton,* 112 Cal.App.2d 871, 874 [247 P.2d 388];

*People* v. *Whitehurst*, 112 Cal.App.2d 140, 144 [245 P.2d 509]; *People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836].)

Occasionally, discussing "substantial evidence," courts have said that the term implies "that such evidence must be of ponderable legal significance. . . . It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case. . . ." (See *Estate of Teed*, 112 Cal.App.2d 638, 644 [247 P.2d 54].) But this in no way qualifies the *"any* substantial evidence" rule; it simply sets the standard for the isolated favorable evidence which must, *of itself,* meet the test of *Estate of Teed.* It does not allow consideration of the *whole record* in determining whether a verdict is, *as a matter of law,* supported by evidence.

Another duty of California's appellate courts on criminal appeals, corollary to their function under the *"any* substantial evidence" rule, is repeatedly stated as:

*"The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. . . ."* (Italics added.) (*People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

It thus appears that, although the reviewing court may not itself weigh the evidence, or pass upon the credibility of witnesses, it is in duty bound from *some* sort of consideration of the evidence, to determine whether, *as a matter of law,* a reasonable jury could have found the accused guilty beyond a reasonable doubt.

In the discharge of this high purpose the court, under the strictures of the *"any* substantial evidence" rule, may consider only *some* of the evidence, i.e., that favorable to the prosecution. This "favorable" evidence, isolated and outweighed as it might be, becomes the *"any"* substantial evidence of the rule and will support the guilty verdict, so long as it is not a *"physical impossibility,"* or *on its face* without consideration of other evidence or inferences, *"false."* (See *People* v. *Lyons,* 47 Cal.2d 311, 320 [303 P.2d 329].) All of the remaining evidence, regardless of its convincing and impeaching force, must be rejected from consideration.

Blum was convicted on the testimony of a wholly uncorroborated eyewitness to a robbery, one Thomas Paganini. At the trial Paganini "positively" identified him as the robber. This testimony, *standing by itself,* meets the test of *"any* substantial evidence"; *on its face* there was indicated no "impossibility" or "falsity," and it could reasonably be "hypothesized" as true. Under it Blum's conviction was evidentially supported. As pointed

out we may not consider contrary evidence, including *other* testimony of Paganini which throws much discredit on his courtroom "positive identification."

The other evidence discloses the following.

At the trial on direct examination Paganini testified that the robber, demanding money, appeared at his store's counter with a gun in his right hand. His left hand covered the lower part of his face. With his hands so engaged the man came around inside the counter to the cash register at which point he lowered his left hand from his face, and with it scooped up $70 in bills; Paganini was thus able to see the entire face of the robber.

However, a police officer testified that Paganini, making no mention of seeing the robber's "entire face," had told him "that during the holdup the robber had the lower portion of his face covered." He further testified that while looking at a group of six police photographs, Paganini placed a matchbook "over the lower portion of the face of one of the photographs" (that of Blum) and said it "could be" the man.

On Paganini's cross-examination he admitted having remembered things differently at Blum's preliminary examination. There also, as with the policeman, he had not recalled the robber, who was three or four feet away, having lowered his *left hand* from his face and with it "scooping up" the money; instead he had testified that the robber, holding the gun in his *right hand* then "put the gun in his pocket and with the same hand plucked out the money."

At the trial Paganini testified that when he first saw Blum at a corporeal lineup he told the attending officer, "I'm positive that's the man." But the officer said he did not use the term "positive"; instead he said he was "almost sure" of his identification. Then on cross-examination Paganini admitted having told a public defender's representative that he was "pretty sure" that the "person he saw in the lineup is the one [he] saw in the store." And the public defender's representative's testimony at the trial— "I asked him if he was positive of the man that he had identified. He hesitated and then said, 'I'm pretty sure. The rest of them were way out. They weren't even close' "—went undenied by Paganini.

Soon after the robbery Paganini told an officer that the robber's "skin was kind of rough like pocks, pocky." At the trial Blum's answer, "Not that I know of" to his attorney's question, "Do you have any marks on your face?" went unchallenged by the prosecution. And we have seen two of Blum's pictures which were placed in evidence; no "pocks" or other such marks are apparent.

Of some significance, although presumably it was not directly considered by the jury on the issue of Blum's guilt, was a police photograph which indicated some earlier police trouble of Blum. (It constituted his only police record and the charge had been dismissed, an "irrelevant" fact of which the jury were unaware.) It was admitted in evidence in support of the "extrajudicial" photographic identification we have adverted to. It may tend to explain the verdict.

Also of significance is the sad experience of our law in the area of such eyewitness identification. These impressions are epitomized in *United States v. Wade*, 388 U.S. 218, 228 [18 L.Ed.2d 1149, 1158, 87 S.Ct. 1926], as follows: "[T]he confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent— not due to the brutalities of ancient criminal procedure.' . . ."

Were we permitted to consider the *whole record* of Blum's trial in our inquiry whether to a reasonable person and as a *matter of law,* "the prosecution sustained its burden of proving [Blum] guilty beyond a reasonable doubt" (see *People v. Reilly, supra,* 3 Cal.3d 421, 425) we, I think (certainly, I), would conclude that it had not.

As has been stated, the Fifth and Fourteenth Amendments render California's *"any* substantial evidence" rule, at least in the area of criminal appeals, invalid. Instead, as will be pointed out, reviewing courts are constitutionally required to consider the *whole record* in determining whether, *as a matter of law,* substantial evidence supports a guilty verdict, or a "reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt."

The requirement that no person shall be convicted except upon proof beyond a reasonable doubt is constitutionally mandated. The United States Supreme Court has said: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt . . . ." (*In re Winship,* 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].)

The premise—that one convicted by a state upon less than proof beyond a reasonable doubt *has been denied a fair trial*—requires no elaboration.

Citing *Powell* v. *Alabama,* 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527], the California Supreme Court in *People* v. *Lyons, supra,* 47 Cal.2d 311, 319, asserted: "It is axiomatic that when an accused is denied that fair and impartial trial guaranteed by law, such procedure amounts to a *denial of due process of law* . . . ." (Italics added.)

In *People* v. *Sarazzawski,* 27 Cal.2d 7, 11 [161 P.2d 934], it was said: "When a defendant has been denied any essential element of a fair trial or due process, even the broad saving provisions of section 4½ [now §13] of article VI of our state Constitution cannot remedy the vice and the judgment cannot stand. . . ."

And in *People* v. *Mahoney,* 201 Cal. 618, 627 [258 P. 607], the court held that a "fair trial" was guaranteed each criminally accused "by law and by the constitution."

We are here concerned with a rule developed by the courts of California. Concerning such state-made rules the United States Supreme Court has said: "The Fourteenth Amendment leaves California free to adopt, by statute or decision, and to enforce, such rule as she elects, . . . But the adoption of the rule of her choice cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law. The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false. . . ." (*Lisenba* v. *California,* 314 U.S. 219, 236 [86 L.Ed. 166, 180, 62 S.Ct. 280].)

California faithfully follows the pertinent constitutional precepts by its rule that "appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. . . ." (See *People* v. *Reilly, supra,* 3 Cal.3d 421, 425.)

But by virtue of its *"any* substantial evidence" rule, California prevents the very inquiry it has mandated. For it cannot be determined whether a reasonable jury could have found proof beyond a reasonable doubt, unless the reviewing court considers the *whole evidence* which was before the jury. A single item of "substantial evidence," of *itself* "reasonable in nature, credible, and of solid value," and neither "impossible" nor on its face, "false," may nevertheless be heavily (as here), even conclusively, outweighed by other evidence. In such a case a reasonable person would not

find the accused to have been proved guilty beyond a reasonable doubt, but the reviewing court is powerless to so declare; and the constitutional insistence on "due process" and "fair trials" is thwarted. This is "fundamental unfairness in the use of evidence" as deplored by the court in *Lisenba* v. *California, supra,* 314 U.S. 219, 236.

The true rule for the guidance of appellate courts was succinctly stated in *Napue* v. *Illinois,* 360 U.S. 264, 271 [3 L.Ed.2d 1217, 1222, 79 S.Ct. 1173], as the duty to make their "own *independent examination of the record* when federal constitutional deprivations are alleged." (Italics added.) This rule has been repeatedly applied to Fourteenth Amendment "due process of law" contentions. (See *Sheppard* v. *Maxwell* (1966) 384 U.S. 333, 362 [16 L.Ed.2d 600, 620, 86 S.Ct. 1507]; *Jacobellis* v. *Ohio* (1964) 378 U.S. 184, 189 [12 L.Ed.2d 793, 798-799, 84 S.Ct. 1676]; *Haynes* v. *Washington* (1963) 373 U.S. 503, 515 [10 L.Ed.2d 513, 521-522, 83 S.Ct. 1336]; *Ashcraft* v. *Tennessee* (1944) 322 U.S. 143, 147 [88 L.Ed. 1192, 1195-1196, 64 S.Ct. 921]; *Lisenba* v. *California, supra,* 314 U.S. 219, 237 [86 L.Ed. 166, 180]; *Chambers* v. *Florida* (1940) 309 U.S. 227, 228-229 [84 L.Ed. 716, 717-718, 60 S.Ct. 472].)

*Jacobellis* v. *Ohio, supra,* 378 U.S. 184, at page 189 [12 L.Ed.2d 793, at page 798], states: "In . . . areas involving constitutional rights under the Due Process Clause, the Court has consistently recognized its duty to apply the applicable rules of law upon the basis of an *independent review of the facts of each case. . . .*" (Italics added.) And where "due process" rights are at issue, *Sheppard* v. *Maxwell, supra,* 384 U.S. 333, 362 [16 L.Ed.2d 600, 620], tells us "the trial courts must take strong measures to ensure that the balance is never weighed against the accused [and] *appellate tribunals have the duty to make an independent evaluation of the circumstances. . . .*" (Italics added.)

Recent California cases recognize and apply this principle in other areas. "[I]t is the duty of the reviewing court to make an *independent evaluation of the record* and to satisfy itself de novo that the defendant can obtain a fair and impartial trial in the county of original venue." (Italics added.) (*Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 293 [95 Cal.Rptr. 798, 486 P.2d 694], and see *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 382 [66 Cal.Rptr. 724, 438 P.2d 372].) And appellate courts will themselves *scrutinize "the record* with respect to [a police] show-up to determine whether defendant was denied due process by the part the showup played in his conviction. . . ." (Italics added.) (*People* v. *Feggans* (1967) 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432 P.2d 21]; and see *People* v. *Bisogni* (1971) 4 Cal.3d 582, 585 [94 Cal.Rptr. 164, 483 P.2d 780].)

Under these compelling authorities there would seem to be little doubt that California's appellate courts in determining whether a criminal conviction is, *as a matter of law,* supported by the evidence, must look to the *whole record.*

There are other reasons why this should be the rule of California.

The *"any* substantial evidence" rule, at least as applied to criminal appeals, seems peculiar to this state.

The scope of inquiry of appellate courts *in other jurisdictions,* when inquiring into the sufficiency of evidence *as a matter of law,* to support a verdict of guilt is illustrated by the following selection. The Texas Court of Criminal Appeals states: "[I]t is proper to consider the *entire record* with each and every fact which throws light on the subject . . . ." (*Villareal* v. *State,* 140 Tex.Crim. 675 [146 S.W.2d 406, 409].) Indiana's Supreme Court, in a questionable identification case, says: "[W]e consider the inherent inconsistency and improbability, particularly as to the essential element of identity . . . . [S]ome of the most tragic errors of courts of law have been chiefly due to honest but imperfect and over-zealous attempts of witnesses in making identifications." (*Thomas* v. *State,* 238 Ind. 658 [154 N.E.2d 503, 506].) Minnesota's courts hold: " '[T]he question of the sufficiency of the evidence to sustain the verdict . . . is then to be determined on appeal by a consideration of all the evidence presented in the case.' . . ." (*State* v. *Golden,* 216 Minn. 97 [12 N.W.2d 617, 619].) Illinois', Ohio's, and New Jersey's appellate courts will also consider the "entire record." (*People* v. *Kincy,* 72 Ill.App.2d 419 [219 N.E.2d 662, 665-666]; *State* v. *Urbaytis,* 156 Ohio St. 271 [46 Ohio Ops. 139, 102 N.E.2d 248, 252]; *State* v. *Fischer,* 97 N.J.L. 34 [117 A. 519] [affd. 98 N.J.L. 293 (118 A. 927)].) Virginia's courts will review "all the evidence" (*Spangler* v. *Commonwealth,* 188 Va. 436 [50 S.E.2d 265, 266]), and South Carolina's, "the entire testimony, including that offered by appellants" (*State* v. *Thompkins,* 220 S.C. 523 [68 S.E.2d 465, 466]). And in such an inquiry, the United States Court of Appeals (10th Cir.) asserted: "We must consider the case as a whole and not piecemeal. The lines of proof must be considered together, not separately. . . ." (*Corbin* v. *United States,* 253 F.2d 646, 649.)

It is observed that elsewhere it is sometimes said that a verdict will be upheld on appeal if supported by "any" or "any credible," or "any substantial" evidence. (See 5 Am.Jur.2d, Appeal and Error, § 835, and cases there referred to.) But an examination of those authorities discloses that existence of such evidence is determined from a consideration of the whole record. None asserts the rule that only that part of the evidence which

supports the judgment may be considered and not that which would tend to defeat it. (See *People* v. *Hrisoulas, supra,* 251 Cal.App.2d 791, 796.)

It may fairly be said that the *"any* substantial evidence" rule is lacking in logic. As has been indicated, an appellate court must determine whether a reasonable person "could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. . . ." *(People* v. *Reilly, supra,* 3 Cal.3d 421, 425.) This burden (described as a "heavy one"; *People* v. *Bassett, supra,* 69 Cal.2d 122, 139) is obviously not met by pointing to an isolated bit of testimony from one of the prosecution's witnesses, when the testimony of those same witnesses, taken as a whole, substantially undermines its probative value.

It is abhorrent to any sense of justice that persons be convicted of crimes they did not commit. Perfection of course is not attainable in this world, but that furnishes no reason why the law should not, within reason, continually strive to prevent such miscarriages of justice. Yet nothing would seem better calculated to perpetuate such injustice, than an *"any* substantial evidence" rule which limits the evidence which may be considered in determining whether, as a matter of law, there is sufficient evidence to convict.

The origin of California's aberrant rule is uncertain. *Seeger* v. *Odell,* 64 Cal.App.2d 397 [148 P.2d 901], suggests that it was somehow mandated by the *Constitution* of the state. That case states (pp. 402-403): "When a judgment is assailed as being unsupported by the evidence, the power of an appellate tribunal in passing upon that question begins and ends with the determination whether there is in the record *any substantial evidence,* contradicted or uncontradicted, to support the ultimate issue involved. Reviewing judges obviously being in no position to determine the credit which should be given to witnesses or to weigh their testimony, the Legislature, in accordance with the constitutional mandate *(Cal. Const., art. VI, § 19)* has provided that the triers of fact shall be the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and except in those instances where it is declared by law that evidence shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061) the triers of fact are the judges of the effect and value of evidence addressed to them." (Italics added.) (See also *People* v. *Boyce,* 99 Cal.App.2d 439, 443-444 [221 P.2d 1011]; *People* v. *Ohman,* 67 Cal.App.2d 467, 475 [154 P.2d 463].)

This rationale seems to explain the appellate court's inability to further examine the record when it has found *"any* substantial evidence." For other-

wise, the court suggested, the reviewing court would be trespassing upon the exclusive *constitutional* province of the jury to determine the weight of evidence and credibility of witnesses. This, it is submitted, is logically erroneous when applied to the reviewing court's admittedly proper function of determining whether, *as a matter of law,* a judgment is supported by evidence.

But giving full credit to *Seeger* v. *Odell, supra,* 64 Cal.App.2d 397, its reasoning and authority are no longer valid. The constitutional provision relied upon, article VI, section 19, which provided, "The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses," was repealed, by vote of the people, in 1966.

It may not be said that the rule upon which Blum's conviction must be affirmed is demanded by considerations of public policy. There is an obvious, and deliberate, judicial trend away from the rule.

In 1972 the Supreme Court in *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432], abolished the long applied *"any* substantial evidence" rule of appellate review in workmen's compensation cases. It was held (p. 637) that reviewing courts must thereafter "review the *entire record* to determine whether the board's conclusion was supported by substantial evidence. . . ."

Similarly, in *Bixby* v. *Pierno,* 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242], it was made clear that where upon judicial review of administrative decisions, the question whether supportive substantial evidence exists, the court will look to the *whole record* of the administrative proceedings.

This reconsidered rule has been applied in at least one area of criminal appeals. In determining whether substantial evidence supported a jury finding of the *higher degree of a crime,* the court in *People* v. *Bassett, supra,* 69 Cal.2d 122, 138, stated: "[W]e must resolve the issue in the light of the *whole record*—i.e., the entire picture of the defendant put before the jury —and may not limit our appraisal to isolated bits of evidence selected by the respondent. . . ." (Italics added.) This must be deemed a repudiation of the *"any* substantial evidence" rule as applied to the context of that case.

It is recognized that Blum's court-appointed counsel has placed little emphasis on the legal insufficiency of the evidence to support his conviction. But most likely, and understandably, he considered such an appellate point as idle because of the *"any* substantial evidence" rule.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1974.